Isaac McDONALD, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 104–86C.

United States Claims Court.

Aug. 28, 1987.

On Motion for Reconsideration
Sept. 16, 1987.

Karen E. McDonald, Flint, Mich., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

### OPINION

REGINALD W. GIBSON, Judge:

### I. INTRODUCTION

On or about November 24, 1970, Isaac McDonald (plaintiff) was the recipient of a long-term, low-interest rate housing rehabilitation loan (# 060150101) through a Department of Housing and Urban Development (HUD) program for owner-occupied property. In 1985, plaintiff sought to pay off the balance on his loan to HUD in order to remove a security lien placed against his property. HUD (defendant), through its agent Comprehensive Marketing Systems, Inc. (CMS) refused to accept plaintiff's check as *payment in full of the balance due* on plaintiff's loan and, therefore, refused to release the lien against plaintiff's property. CMS is the servicer of HUD mortgages under subject program.

Plaintiff's complaint seeks money damages, in the amount of $90,000 plus $10,000 in attorney fees and other costs, for breach of contract. These damages stem from defendant's alleged failure to release the mortgage lien despite the fact that plaintiff contends that he paid off the balance due in full. Additionally, plaintiff seeks specific performance requiring defendant to release said lien.[1]

Jurisdiction in this court is premised on an express contract. 28 U.S.C. § 1491. Subject case is now before the court on the plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For reasons hereinafter delineated, plaintiff's motion is denied and defendant's motion is granted.

### A. *Facts*

Plaintiff, Isaac McDonald, a resident of Flint, Michigan, applied for and obtained a RAA Rehabilitation loan from defendant, the Department of Housing and Urban Development (HUD) in November of 1970. The loan amount was for $6,400.00 and was to be repaid over 240 months with 3% interest. Defendant placed a lien upon plaintiff's property for the face amount of the loan to secure repayment thereof. An escrow account for the payment of real estate taxes and property insurance premiums was also a stipulation of the agreement for the duration of the loan. Plaintiff agreed to pay these sums to defendant's mortgage servicer, Comprehensive Marketing Systems, Inc. (CMS), who would then make real estate tax and insurance premium payments when due on plaintiff's behalf.

In 1981, plaintiff executed an Extended Repayment Agreement with HUD because his payments were delinquent in the amount of $1,852.75. Of the amount in arrears, $608.87 was attributed to an escrow deficit. The terms of the Extended Repayment Agreement (the Agreement) provided that the plaintiff's monthly payment would be increased to cover the payment delinquency; that the *increased* payments would continue until 1990; and that the Agreement would remain in force until such time as plaintiff brought his loan current prior to the expiration of the Agreement. The Agreement also prioritized the application of plaintiff's periodic payments to the loan obligations as follows: First, to escrow for property taxes and hazard insurance; second, to repayment of any advances made by HUD for escrow or other expenses; third, to currently due and/or delinquent interest on the loan; and fourth, to repayment of current and/or delinquent principal payments. As previously noted, these terms were to remain in effect until the expiration of the Agreement (1990) or until plaintiff brought the loan current. In

---

**1.** Plaintiff's pleadings are confusingly ambiguous. Following his demand for damages in his prayer plaintiff uses the conjunctive "and" followed by the phrase "in the alternative." At first blush one would conclude that plaintiff's

prayers are in the alternative; however, because of the conjunctive, it is clear that plaintiff also seeks release of the lien through specific performance.

1983, plaintiff's periodic payments were again adjusted upward due to an escrow deficit of $1,417.21. In October of 1984, plaintiff's account had an escrow deficit of $1,188.58.

In July of 1985, while the Agreement was still in effect, plaintiff requested that CMS advise him as to the amount necessary to pay off the loan *in full.* In response thereto, on August 12, 1985, CMS forwarded the requested payoff information to plaintiff by letter which was as follows:

| | |
|---|---|
| Principal balance | $3,311.64 |
| Interest from 12/1/84 at .28 per day | 82.26 |
| Late charge | 1.06 |
| Unapplied funds | 130.30 |
| Escrow balance (deficit) | 620.61 |
| Total due (effective through 9/12/85) | $3,885.27. |

Notwithstanding the foregoing "total due" on the account was shown to be $3,885.25, on September 5, 1985, plaintiff forwarded a check to CMS by letter for only *$3,270.78 allegedly "as full payment of the ... referenced account."* The letter's explanation read as follows:

The following figures substantiate the pay off of this loan:

| | |
|---|---|
| Principal balance | $3,311.64 |
| Interest | 82.26 |
| Late charge | 1.06 |
| | $3,394.96 |
| | − 130.30 |
| | $3,264.66 |
| Interest through 9/9/85 | 6.12 |
| | $3,270.68. |

The penultimate paragraph of said transmittal letter also contained the following request:

Please acknowledge receipt of said payoff *if* the above figures are confirmed by your office as correct. (emphasis added).

As is clearly shown, CMS's notice of the payoff amount due reflected in its letter of August 12, 1985, contained a deficit to the escrow account in the amount of $620.61. Nevertheless, in forwarding his check on September 5, 1985, purporting to be in "full payment of the ... referenced account," plaintiff simply ignored the $620.61 shown to be due on the CMS letter of August 12, 1985, as an escrow deficit. Plaintiff's can-

celled check also contains a memo reference—"balance due." Upon drawing and transmitting said check in the amount of $3,270.78, plaintiff consequently did not pay the $620.61 escrow deficit; thus, the facts are clear beyond cavil that plaintiff failed to make "full payment of the ... referenced account" on or about September 5, 1985.

Consistent with the foregoing, on October 24, 1985, CMS notified plaintiff by letter, after depositing plaintiff's check, that the loan account was *not* paid off in full. Due to escrow advances made by CMS to pay taxes and insurance premiums on plaintiff's behalf, said letter advised that "the amount needed to pay the account off in full is $617." With regard to the $3,270.78 payment, the application of payment document, *supra,* shows that CMS followed the terms of the Extended Repayment Agreement in applying plaintiff's September 1985 payment of $3,270.78. In short, said payment was allocated between escrow, interest, late charges, and principal. Because there continued to remain a deficiency, and the account has not been paid in full, defendant has refused to release the lien against plaintiff's property. Further, defendant contends that as of November 7, 1986, the sum of $1,766.70 was required to pay off plaintiff's loan account in full.

### B. *Parties' Contentions*

Plaintiff contends that the payment that he submitted to CMS on September 5, 1985, was payment in full of the "balance due" on his HUD loan account. Further plaintiff argues that since defendant's agent, CMS, accepted and negotiated plaintiff's check which was for a *lesser* amount ($620.61) than the balance due on the loan, plaintiff's loan is fully discharged under the doctrine of accord and satisfaction pursuant to the Uniform Commercial Code (UCC).

Defendant counters by contending that CMS did not have authority to compromise the debt of plaintiff to it by accepting a check for an amount *less* than the total amount due as payment in full. The UCC,

defendant argues, does not apply to transactions with the Government. Finally, defendant asserts that there is still a balance due on plaintiff's loan.

## C. *Issues*

From the foregoing arguments, three main issues emerge: (i) whether plaintiff paid off the loan in full, by partial payment, pursuant to the doctrine of accord and satisfaction; (ii) if not, did defendant breach the contract for failure to release the lien; and (iii) did CMS have authority to compromise the obligation due defendant by accepting plaintiff's lesser payment as payment in full?

Each of these issues shall be examined in depth in the discussion that follows.

## II. DISCUSSION

Motions for summary judgment are governed by RUSCC 56 which comprises a two-part determination. First, based on the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, the moving party must show (i) that there are no genuine issues as to any material fact and (ii) that it is entitled to judgment as a matter of law. RUSCC 56(c); *Balboa Insurance Co. v. United States*, 775 F.2d 1158 (Fed.Cir.1985); *SRI International v. Matsushita Electric Corp*, 775 F.2d 1107 (Fed.Cir.1985). Second, the court must determine—whether the non-moving party has presented any specific facts in its opposition response (depositions, answers to interrogatories, or affidavits) to show that genuine issues of fact exist for trial or whether the non-moving party relies solely on unsupported allegations and/or denials. RUSCC 56(e); *Balboa*, 775 F.2d at 1163. Where the non-moving party merely asserts unsupported allegations and conclusions, the court will not deny the moving party's motion for summary judgment if the moving party meets his burden under RUSCC 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden "on the moving party may be discharged by 'showing'— that is by pointing out to the ... Court— that there is an absence of evidence to support the non-moving party's case." *Id.* at 2554.

In order to defeat the motion for summary judgment, the non-moving party must present specific and credible facts that either tend to establish all the necessary elements of its cause of action or at least are sufficient to raise genuine issues of material fact relative to its cause of action. *Id.* at 2552–53. The motion for summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 2553. If the non-moving party fails to present facts concerning an essential element of its case with respect to which it has the burden of proof, there is no genuine issue of material fact. The moving party is then entitled to judgment as a matter of law. *Id.*

In the case now before the court, each party has moved for summary judgment so the two-part standard under RUSCC 56(c) and 56(e) will be applied in the context of each party's motion separately.

### A. *Plaintiff's Motion For Summary Judgment*

In his motion for summary judgment, plaintiff bases his argument, that he paid off his loan account *in full*, on the doctrine of accord and satisfaction, *i.e.*, the offer and acceptance by the parties of a lesser performance for the original performance due. This contention appears to contradict plaintiff's previous position, that no greater performance was due on his part. Specifically *in his complaint*, plaintiff alleged that he paid the loan account in full on September 5, 1985 and that no real estate taxes and/or insurance premiums were then delinquent. The court will proceed to apply the two-part standard for summary judgment to both of plaintiff's positions. The facts here do not appear to be in dispute—only the legal significance of those facts.

First, plaintiff argues that he paid his loan account *in full* ($3,270.78), on September 5, 1985, at which time no real property

taxes or insurance premiums were delinquent. Since this is an affirmative position of plaintiff, he bears the burden of persuasion on this assertion under the first part of the summary judgment standard. In terms of RUSCC 56(c), plaintiff's burden is to support this position with "credible evidence sufficient to entitle it to a directed verdict if not controverted at trial." *Gregory Lumber Co., Inc. v. United States*, 11 Cl.Ct. 489 (1986), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Plaintiff also bears the same burden under the summary judgment standard for his assertion of discharge of his obligation to repay his loan account in full under the doctrine of accord and satisfaction. Under the second part of the summary judgment standard, RUSCC 56(e), plaintiff bears the burden of persuading the court that, with respect to those issues on which defendant bears the burden of proof at trial, defendant's evidence is insufficient to establish at least one essential element of defendant's affirmative defense (*i.e.*, that CMS lacked authority to accept a lesser payment from plaintiff in satisfaction of plaintiff's total debt then owing). The court finds that the plaintiff fails to meet all three burdens given the record before the court and, therefore, denies plaintiff's motion.

▪ With respect to plaintiff's first shortfall, we note that CMS's letter of August 12, 1985, unambiguously states that in order to "pay off ... our loan," the "total due effective thru 9/12/85 [is] $3,885.27." Thus, by making a payment by check on September 5, 1985 in the amount of $3,270.78 plaintiff did not actually make full payment of its account. Moreover, plaintiff presents no specific and credible evidence, beyond mere allegations or denials, to substantiate its contention that no property taxes and insurance premiums were delinquent on September 5, 1985, when he tendered the check which failed to include the escrow deficit amount ($620.61) required by CMS. There is one letter from plaintiff dated July 16, 1985, in which plaintiff alleges that CMS has been delinquent in making escrow payments and that plaintiff's payments were timely. But plaintiff presents no documentation of fact to support this bare allegation and the uncontroverted evidence is to the contrary.

In the documentation adduced by plaintiff, there is an escrow account analysis and monthly payment adjustment notice showing that as late as October 29, 1984, plaintiff was carrying an escrow deficit of $1,188.58. Plaintiff's submissions fail to show that this deficit was ever paid off and that the account was brought fully current in 1985. Finally, plaintiff's submissions also show that CMS made at least one advance to plaintiff's account in 1985 in order to cover insurance premiums and tax payments due on plaintiff's behalf. Again, no documentary evidence was proffered to show that this advance was ever repaid. From plaintiff's submission, therefore, it appears clear that he had yet to bring his loan account current as of September 5, 1985. That being the case, the Agreement, *supra*, controlled the application of plaintiff's periodic payments to his various obligations. In such case, all delinquencies were first satisfied, then current escrow, interest, and last principal. Given the foregoing, plaintiff failed to meet his burden of establishing that he paid off his account in full with the payment of $3,270.78 when, in fact, it was clear beyond cavil that $3,885.27 was then due.

Next, on his burden of establishing his obligation to pay no more than the amount submitted (*i.e.*, $3,270.78) as payment of the alleged "balance due" pursuant to the doctrine of accord and satisfaction, plaintiff also fails. In this connection, he argues that under the Uniform Commercial Code the fact that defendant's agent, CMS, accepted his check, which was clearly labelled "Balance Due," constituted full payment of plaintiff's loan, even though the check was for a lesser amount (by $620.61) than the payoff amount required by CMS on August 12, 1985.

▪ The equities in this case may, on the surface and at first blush, appear to line up in favor of plaintiff in light of the small amount initially required by CMS to pay off plaintiff's loan in full. However, on

close examination of the pleadings and evidence, particularly the Agreement, which plaintiff voluntarily signed, it becomes crystal clear that plaintiff's predicament is of his own making; and, moreover, that his position is untenable. This is so because plaintiff unilaterally disregarded the provisions regarding the application of amounts paid under the Agreement. He arbitrarily based and applied *his* so-called "payoff" calculations solely on the amount reported by CMS as "principal balance due" plus interest and late charge, rather than the amount clearly shown as "Total due." In short, plaintiff purports to disavow the binding Agreement which was entered into for his benefit.

■ Even if said repayment Agreement were not operative, federal common law, not state-adopted UCC as plaintiff argues, governs questions of "the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) (priority of liens generated under federal lending programs must be determined with reference to federal law). *See also Marine Midland Bank v. United States,* 231 Ct.Cl. 496, 687 F.2d 395 (1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983) (federal common law, not Article Nine of the UCC, determines the government's claim of vesting of title in government contractor's inventory). Thus, the UCC gives plaintiff no comfort regarding the issues postured here. This is so because federal common law is clear with regard to the requisite elements of the doctrine of accord and satisfaction. Accord and satisfaction is "one of the recognized methods of discharging and terminating an existing right." *Chesapeake & Potomac Telephone Co. of Virginia v. United States,* 228 Ct.Cl. 101, 654 F.2d 711 (1981) (*citing* 6 *Corbin on Contracts* § 1276 (1962)). "Discharge by accord and satisfaction 'means a discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction of his claim.'" *Brock & Blevins Co., Inc. v.*

*United States,* 170 Ct.Cl. 52, 343 F.2d 951 (1965) (*quoting* 6 *Corbin on Contracts* § 1276 (1962)).

"The two parties may first make an accord executory [that is, a contract for the future discharge of the existing claim by a substituted performance still to be rendered]. When this executory contract is fully performed as agreed, there is said to be an accord and satisfaction, and the previously existing claim is discharged." An accord and satisfaction is also possible however, "without any preliminary accord executory." *Chesapeake & Potomac Telephone Co.,* 228 Ct.Cl. at 108, 654 F.2d at 716, *quoting* 6 *Corbin on Contracts* § 1276 (1962).

A debtor may offer the substituted performance in satisfaction of his debt and the creditor may receive it, without any binding promise being made by either party.... In such cases, the new transaction is wholly executed at the very moment of acceptance. The substituted performance is fully rendered and the antecedent debt is discharged, leaving nothing more to be done by either party.

*Id., quoting* 6 *Corbin on Contracts* § 1276.

Case law in the predecessor Court of Claims has delineated the operative elements of an accord and satisfaction as follows: "proper subject matter, competent parties, meeting of the minds of the parties, and consideration. And its most common pattern is a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance *in satisfaction of a claim or demand which is a bona fide dispute.*" (emphasis added). *Brock & Blevins Co., Inc.,* 170 Ct.Cl. at 59, 343 F.2d at 955 (*quoting, Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.,* 176 F.2d 73, 76 (10th Cir.1949)).

As in the formation of other contracts, the following establishes that the critical element is that there *must* be a meeting of the minds of the parties:

"In order that a performance rendered by an obligor shall operate as a satisfaction of the claim against him, it must be offered as such to the creditor." ...

> There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise. If not so rendered, there is no accord, either executory or executed, for the reason that there are no operative expression of agreement—no sufficient offer and acceptance.

*Chesapeake & Potomac Telephone Co.*, 228 Ct.Cl. at 109, 654 F.2d at 716, *quoting* 6 *Corbin on Contracts* § 1277 (1962) (emphasis in original).

■■■ Retention or cashing of the debtor's check can, in *some* circumstances, operate as an acceptance by the creditor of the debtor's offer to give substituted performance. *"Where the amount is in dispute,* and the debtor sends cash or check for less than the amount claimed, clearly expressing his intention that it is sent as a settlement in full, and not on account or in part payment, the retention and use of the money or the cashing of the check is almost always held to be an acceptance of the offer operating as a full satisfaction, even though the creditor may assert or send word to the debtor that the sum is received only in part payment." 6 *Corbin on Contracts* § 1279 (1962) (emphasis added). Conversely, as here, where the amount due was *not then in dispute,* retention or negotiation of the check for an amount less than the debt by the creditor does *not* effectuate an accord and satisfaction, regardless of any evidence that the debtor *intended* the payment as a full satisfaction. *Chesapeake & Potomac Telephone Co.*, 228 Ct.Cl. at 109, 654 F.2d at 716 (court rejected government's assertion that plaintiff's cashing the checks tendered constituted binding accord and satisfaction) (emphasis in original). Rather, there must be creditable evidence that payment was tendered and received with the *mutual* understanding and agreement that payment was made in settlement of a *disputed*

*amount due. Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73, 76 (10th Cir.1949) (payments were not made as a mutually agreed settlement of royalty claims and did not constitute a discharge of obligation to pay royalty).

■■ The foregoing obligatory precedent teaches that in order to have an efficacious accord and satisfaction, *both* parties *must* agree that the payment ends a then-existing *controversy.* Otherwise, it is not enough for the debtor to simply write "payment in full" on the face of his check and, self-servingly, legally attempt to extinguish the unpaid portions of his debt. If that was all that was required to extinguish a legally binding obligation, a one-time letter writing event by consumers could literally bankrupt the domestic industry. *Louis Schlesinger Co. v. Kresge Foundation*, 388 F.2d 208, 210 (3rd Cir.1968). It is also not enough that the debtor tenders a lesser amount than the creditor claims even if the creditor has knowledge that the debtor claims to be indebted to him only in the amount paid unless the debtor expressly indicates or circumstances clearly indicate that the payment is "offered upon condition that it be accepted in full satisfaction or not at all." *Chesapeake & Potomac Telephone*, 228 Ct.Cl. at 109, 654 F.2d at 716 (citing 1 Am.Jur.2d *Accord and Satisfaction* § 15 (1962)).

Against the foregoing precedent, in the case at bar, plaintiff fails to make the necessary showing "sufficient to establish the existence of an element essential to [his] case and on which [he] will bear the burden of proof at trial." *Celotex Corp.*, 106 S.Ct. at 553. That element, as to which the plaintiff fails in its proof, is that the amount due on plaintiff's loan account was in dispute. With regard to that point, plaintiff misreads the law by averring that the existence of a dispute, as to the amount due, is immaterial. However, as set out above, a dispute as to the amount due, that pre-existed the payment intended to discharge the debt, is an operative element under federal common law. In July of 1985, plaintiff requested payoff informa-

tion from CMS at which time there was *no* dispute as to any amount *then* due. In September of 1985, plaintiff submitted his check along with a cover letter containing the following caveat indicating that plaintiff was *relying on CMS* for verification of the correct and full payoff figure:

Please acknowledge receipt of said payoff check *if the above figures are confirmed* by your office as correct.

(emphasis added). In none of the letters from plaintiff to defendant do we find the slightest inkling of an adversarial *dispute* as to the amount due prior to plaintiff's so-called "full payment of the ... referenced account" on September 5, 1985. Moreover, plaintiff simply based his payoff calculation on the amount shown due as the "principal balance" (which was only part of the total amount then shown to be due) in the letter from CMS dated August 12, 1985, plus interest and late charges. Plaintiff disregarded the amount shown in the same letter as the escrow deficit amount ($620.61) despite the fact that the ongoing Agreement provided that plaintiff's payments were to be applied to the loan balance outstanding only *after* all other existing debts were curtailed. CMS also notified plaintiff on the September 19, 1985 monthly billing and by letter dated October 24, 1985 that there remained an amount due to pay the account off in full.

Therefore, despite the submission of the check bearing the notation "Balance Due," and the following caveat in the transmittal letter—"full payment of the ... referenced account," the doctrine of accord and satisfaction is inoperative given the absence of a *pre-existing* dispute. None of plaintiff's documents present credible evidence as to a pre-payment dispute over the escrow deficit or the balance due on plaintiff's loan account. As previously noted, the contrary is true—plaintiff's submissions give credence to an ongoing undisputed escrow deficit. Thus, as a matter of law, plaintiff fails to meet his burden regarding accord and satisfaction and is, therefore, not entitled to a summary judgment.

Plaintiff is also unable to show that there is an absence of evidence to support defendant's position—that CMS lacked authority to discharge the debt by accepting the lesser payment. *Celotex Corp.*, 106 S.Ct. at 2554. Nowhere in his submissions does plaintiff either contend or show that CMS had the authority to accept the payment of an amount less than the total debt due as a complete payment of plaintiff's obligation. Since plaintiff fails to meet his burden on both parts of the summary judgment standard, his motion must be denied.

B. *Defendant's Cross-Motion For Summary Judgment*

█ In defendant's cross-motion for summary judgment, defendant argues that its agent, CMS, had no authority to accept plaintiff's payment of an amount less than the total debt due (by $620.61) as payment in full of plaintiff's loan account. While the court has found above that an effective accord and satisfaction does not exist between the parties, this issue of the authority of CMS will nevertheless be addressed. The court will proceed to test defendant's position under the summary judgment standard referred to above. Since defendant raises the lack of authority of CMS to compromise the debt, as an affirmative defense, the burden of persuasion is on defendant under RUSCC 56(c) to support its motion with credible evidence sufficient to entitle it to a directed verdict if not controverted at trial. *Celotex*, 106 S.Ct. at 2553. Defendant must then go on to persuade the court that plaintiff's evidence is insufficient to establish at least one essential element of breach of contract. As discussed hereinafter, the court finds that defendant has met these burdens.

In its motion for summary judgment, defendant correctly states the law that "[w]hatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947) (local agent for Federal Crop Insurance Corp. exceeded authority by insuring farmer's crop which was expressly exclud-

ed by regulations). *See also Jascourt v. United States*, 207 Ct.Cl. 955, 521 F.2d 1406 (1975) (party who relied on Government official's statements has the affirmative burden of showing that the officials had the authority to commit the Government). Further, defendant provides specific and credible evidence, which is uncontroverted, that CMS as loan servicer for defendant did not have the authority necessary to accept plaintiff's lesser payment as payment in full for plaintiff's loan account. CMS could only make recommendations on certain accounts to HUD as to the propriety of compromising an obligation. Only HUD, not its loan servicer, had the authority to *accept* a lesser payment and discharge a borrower's debt. *See* Defendant's Cross-Motion for Summary Judgment Appendix A (CMS Policies and Procedures for Servicing Section 312 Rehabilitation Loans, § 5–8 Compromise). *See also* Appendix A, Redelegation of Authority to Execute Legal Instruments in the Name of the Secretary, 50 Fed.Reg. 13,667 (1985) (authority to execute legal instruments under the section 312 loan program has been delegated to the Assistant Secretary for Community Planning and Development). We find no evidence indicating that the Secretary has redelegated such authority to loan servicers, such as CMS, and plaintiff refers us to none.

Thus, in meeting the second burden under RUSCC 56(e), defendant persuades the court that plaintiff cannot make out the element in proof of breach of contract, that defendant's duty to perform (*i.e.*, to remove the lien against plaintiff's property) had matured, because we find on the uncontroverted facts that the entire loan amount was never paid off. Plaintiff fails to raise a genuine *material* issue of fact, that no escrow deficit existed, at the time of plaintiff's alleged full payment on September 5, 1985 because plaintiff merely relies on the bare allegations that no taxes or insurance premiums were delinquent. This assertion is unsupported by the record. *See* Plaintiff's Proposed Findings of Uncontroverted Facts, para. 8. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2553. When the non-moving party (*i.e.*, plaintiff) completely fails to establish an essential element of his case, there can be no issue of material fact since the proof failure renders all other facts immaterial. *Id.* The defendant is entitled to judgment as a matter of law because here the plaintiff failed to make a sufficient showing on the elements of full payment and accord and satisfaction.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted and the Clerk shall dismiss plaintiff's complaint.

No costs.

IT IS SO ORDERED.

### ORDER RE PLAINTIFF'S MOTION FOR RECONSIDERATION

This order addresses plaintiff's Motion For Reconsideration of the court's opinion of August 28, 1987, pursuant to RUSCC 59(a)(1), (b) and (d),[1] which was filed on

---

1. RUSCC 59(a)(1), (b), and (d) provide in pertinent parts as follows:

(a) Grounds. (1) A ... reconsideration may be granted to all or any of the parties and on all or part of the issues for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States. On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

\* \* \* \* \* \*

(b) Time for Motion and Response. Except as provided in subdivision (a)(2) of this rule, a motion for a ... rehearing shall be filed not later than 10 days after the entry of the judgment. No response may be filed to a motion for ... reconsideration. However, the court will not rule in favor of such a motion without first requesting by order a response to it.

\* \* \* \* \* \*

September 8, 1987. Said opinion granted defendant's, and denied plaintiff's, motion for summary judgment. Plaintiff averred in his motion that, as a matter of law, there was a duly executed accord and satisfaction. Further, plaintiff contends that he was entitled to summary judgment inasmuch as there, necessarily, were no *genuine issues of material facts* regarding the operative elements with respect thereto.

The court held in its opinion, based on the total submissions of the parties, that *at the time of the partial payment ($3,270.68) on September 5, 1985,* there was no evidence of a bona fide *pre-existing* dispute as to the *amount due* on plaintiff's loan. Given such holding, the court found that there were no genuine issues of material facts, that a critical element of accord and satisfaction was wanting, *i.e.,* a bona fide pre-existing dispute, and consequently, as a matter of law, that plaintiff was *not* entitled to summary judgment.

In his RUSCC 59 motion, plaintiff seeks reconsideration of this court's August 28, 1987 determination—*i.e.,* "that the balance due on Plaintiff's loan was an amount *not* in dispute at the time of Plaintiff's attempted tender of payment in full" (emphasis in original). In short, plaintiff urges this court, pursuant to RUSCC 59(a) to open the judgment, to allow for an evidentiary hearing on the issue of the existence of a dispute, and to also allow for amended findings of facts and conclusions of law.

Supportive of his position that no escrow amounts were due regarding real estate taxes and insurance premiums at the time of the partial payment on September 5, 1985,[2] plaintiff refers to certain evidence in the record *previously* submitted, and considered by the court. Additionally, plaintiff relies on certain evidence attached to his motion for reconsideration, including an affidavit of counsel of record which was *not* previously before the court at the time of consideration of the cross-motions for summary judgment.

After a careful consideration of the subject motion, including the additional material and the entire file, the court is constrained to conclude that no good and persuasive reasons have been proffered to warrant the court, on this record, to reopen subject case, vacate the prior rulings, and to grant the relief as requested by plaintiff. To the contrary, such review reaffirms that the court's August 28, 1987 decision was correct as a matter of law.

With regard to the propriety of acting favorably on plaintiff's motion, we observe that in this court, and in the federal system generally, post-opinion motions to reconsider are not favored. In *Prestex, Inc. v. United States,* 4 Cl.Ct. 317, 318 (1984), Judge Lydon explained that the foregoing "is especially true where a party has had a fair opportunity to ... litigate the point in issue." *General Electric Co. v. United States,* 189 Ct.Cl. 116, 117–18, 416 F.2d 1320, 1321 (1969). *See Carter v. United States,* 207 Ct.Cl. 316, 318, 518 F.2d 1199 (1975), *cert. denied,* 423 U.S. 1076, 96 S.Ct. 861, 47 L.Ed.2d 86 (1976). As in *Prestex,* plaintiff in the case at bar has had ˄ fair opportunity to thoroughly brief the issue(s) raised in his motion for reconsideration. In fact, at page 5 of Plaintiff's Motion for Summary Judgment, he simply concluded that—"It is immaterial whether the amount was disputed or not." Thus, at the time the court rendered its decision on August 28, 1987, plaintiff had presented his argu-

(d) Motion To Alter or Amend a Judgment. A motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment.

2. Contrary to plaintiff's contentions that no escrow amounts were due for real estate taxes at the time of the alleged full payment on September 5, 1985, even plaintiff's own evidence belies that contention. Attached as part of Exhibit B to plaintiff's motion for reconsideration is a document dated November 18, 1985, City of Flint, Office of Treasurer, which discloses that the second installment of property taxes ($373.76) on 821 E. Ninth Street was paid on October 29, 1985. Also attached, as a separate document, is a bill for said second installment which indicated that payment was in fact due on or about July 31, 1985. Since plaintiff made the partial payment of $3,270.68 on September 5, 1985, and the second installment of real estate taxes was not paid until October 29, 1985, the evidence is inescapable that an amount of real estate taxes was due as of the attempted pay-off date, *i.e.,* September 5, 1985.

ment(s) and supporting evidence probative of his motion for summary judgment and in opposition to defendant's cross-motion for summary judgment.

 Plaintiff now seeks, *after* the court has passed on the parties' cross-motions for summary judgment, to have the court reconsider the issue he raised—*i.e.*, a bona fide dispute is immaterial on the issue of establishing an accord and satisfaction, in the context of additional evidence not previously submitted coupled with the evidence in the entire record. Justification for this reconsideration is that failing such "Plaintiff will be forever estopped from raising this issue again...." (Motion, p. 3).[3]

This court is not persuaded by plaintiff's grounds proffered for reconsideration. First, it is clear that plaintiff himself gave that issue short-shrift and concluded that it was immaterial. Now that the court's opinion has held that said point is an operative element in proving accord and satisfaction, plaintiff seeks to reargue an issue which he initially was aware of but ignored. Against this background, it is our position that the court has a right to know *before* it rules on cross-motions for summary judgment whether the parties have anything further to present. *General Electric Co. v. United States*, 189 Ct.Cl. at 118, 416 F.2d 1320. Plaintiff was *not* unaware of the issue but simply failed to recognize its significance, and we can only say, therefore, that for plaintiff this was unfortunate.

For the foregoing reasons, the subject motion of plaintiff is DENIED.

IT IS SO ORDERED.

---

**3.** Plaintiff is certainly aware that this assertion is not totally true in view of his right to appeal to the United States Court of Appeals for the Federal Circuit.