George H. AHRENS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 02–115 C.

United States Court of Federal Claims.

Sept. 30, 2004.

B. Craig Deats, Deats & Levy, P.C., Austin, Texas, for Plaintiffs.

Gerald M. Alexander, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant, with whom were Franklin E. White, Jr., Assistant Director, David M. Cohen, Director, and Peter D. Keisler, Assistant Attorney General; and of counsel were Catherine Kessmeier and Ellen Lynch, Office of Counsel, Naval Sea Systems Command, Washington, D.C.

## OPINION

DAMICH, Chief Judge.

### I. Introduction

The 95 Plaintiffs in this action are GS–12 civilian engineering technicians at the Portsmouth and Puget Sound Naval Shipyards, seeking unpaid overtime wages pursuant to the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201 *et seq.*, and regulations implementing FLSA for federal employees, promulgated by the Office of Personnel Management, located at 5 C.F.R. Part 551. Compl. ¶¶ 1, 8. Pending are Defendant's Motion for Summary Judgment on its affirmative defense of accord and satisfaction (hereinafter "Def.'s Mot."), filed March 11, 2003, and Plaintiffs' Cross–Motion for Partial Summary Judgment as to Defendant's defense of accord and satisfaction (hereinafter "Pls.' X–Mot."), filed November 26, 2003.

For the reasons explained below, both motions are hereby GRANTED IN PART and DENIED IN PART.

## II. Background

On December 2, 1995, the International Federation of Professional and Technical Engineers (hereinafter "IFPTE" or "Union"), the exclusive collective bargaining agent of the Plaintiffs, reached a Global Memorandum of Understanding (hereinafter "MOU") with the Naval Sea Systems Command (hereinafter "NAVSEA"), attempting to resolve a number of FLSA overtime grievances and two lawsuits filed by civilian employees at six Naval shipyards. Plaintiffs' Proposed Findings of Uncontroverted Fact (hereinafter "PPFUF") ¶ 3, at 2; Plaintiffs' Response to Defendant's Proposed Findings of Uncontroverted Fact (hereinafter "Pls.' Resp. to DPFUF") ¶ 5, at 2. The employees are or were members of IFPTE at six different locales: Long Beach, Mare Island, Norfolk, Philadelphia, Portsmouth, and Puget Sound. PPFUF ¶ 2, at 1. The grievances involved employees in a variety of pay grades and classifications. *Id.* Only twenty of the Plaintiffs in this action were GS–12 Technician employees who had filed grievances prior to the MOU (hereinafter "grievants"). Defendant's Response to Plaintiffs' Proposed Findings of Uncontroverted Fact (hereinafter "Def.'s Resp. to PPFUF") ¶¶ 8–9, at 4–5. The other 75 Plaintiffs in this action either were not GS–12 Technician employees in 1995 or had not filed grievances before 1995 (hereinafter "non-grievants"). *Id.*

A prefatory memorandum to the MOU, also dated December 2, 1995 and signed by representatives of the Navy, the IFPTE, and the union locals, recites that the MOU was reached "to resolve the Fair Labor Standards Act (FLSA) grievances at the locations specified in 'the Global MOU.'" Appendix to Def.'s Mot. (hereinafter "Def.'s App.") at 2. The opening sentence of the MOU itself recites:

> This Memorandum of Understanding (MOU) is made by and between the Naval Sea Systems Command 07 (Employer) and the International Federation of Professional and Technical Engineers (IFPTE), in consideration of the mutual promises and

representations contained herein in regard to the Fair Labor Standards Act (FLSA) claims on behalf of employees in the court cases entitled *Abundis v. United States* and *Bow v. United States*,[1] and the FLSA grievances in the IFPTE bargaining units identified below in paragraph 1.

*Id.* at 3.; MOU at 1 (footnote added).

Of particular significance to Plaintiffs' claims, ¶ 12 and Appendix D of the MOU provided, *inter alia*, that the GS–12 Technician positions in question (job series GS–856 and GS–802) would henceforth be considered FLSA-exempt, but that the employees affected would be eligible to participate in an incentive program. Def.'s App. at 10, 25; Pls.' Resp. to DPFUF ¶ 3, at 2. Further, ¶ 16 provided that the GS–12 grievants would receive backpay and interest, through March 1996, in amounts sufficient to compensate them for the overtime they would have received as FLSA non-exempt employees. Def.'s App. at 11–12.

In 2000, the IFPTE revived the issue of GS–12 FLSA exemption because of indications that, despite the MOU, the government was classifying a number of new GS–12s as non-exempt, and thus entitled to overtime compensation. Def.'s Resp. to PPFUF ¶ 13, at 6–7. As a result, within the same pay grades and job classifications, some GS–12s were considered exempt and some were classified non-exempt, leading the exempt employees to complain of unfair/unequal treatment. *Id.* ¶¶ 13–14, at 6–7. Consequently, after several meetings between IFPTE and Naval officials, a Second Supplemental Agreement to the 1995 MOU (hereinafter "SSA") was executed on June 29, 2001. *Id.* ¶ 15, at 7. The SSA provided that the Navy would re-classify *all* of the GS–12 Engineering Technician positions in the 802 and 856 series as FLSA non-exempt by no later than October 7, 2001. *Id.*

The anomalous classification of some GS–12s as exempt and others as non-exempt subsequent to the 1995 MOU, but before the 2001 SSA, was due to a particular grandfathering provision in the MOU regarding ex-

---

1. There is no indication that any of the Plaintiffs in this case was involved in either of these two lawsuits.

isting GS–12s at the Portsmouth Naval Yard. In ¶ 13 of the MOU, these grandfathered employees were given the choice of "remaining FLSA non-exempt while they occupy these positions" or being made FLSA-exempt (with the benefit of the incentive and performance awards and compensatory time to be afforded the exempt GS–12s under ¶¶ 12, 16).[2] Def.'s App. at 10–11. Approximately 20 Portsmouth GS–12s chose to remain non-exempt, but they ultimately misconstrued that their entitlement under the MOU to FLSA overtime compensation in those positions was a personal accommodation, rather than a position accommodation. Appendix to Pls.' X–Mot. (hereinafter Pls.' App.") at 267–68; Deposition of James L. Kautz (hereinafter "Kautz Dep.") at 24, 29; Def.'s Resp. to PPFUF ¶ 10, at 5. Thus, as these 20 employees moved throughout their careers to other job classifications within the GS–12 pay grade, they continued to insist on retaining non-exempt status. Def.'s Resp. to PPFUF ¶ 10, at 5. According to Human Resources Office director James L. Kautz, the Navy then made a decision that the grandfathered "position" exemptions would be converted to "personal" exemptions that would follow the grandfathered technicians from job to job throughout the Technician series. Pls.' App. at 269; Kautz Dep. at 32. Thereupon, compounding the confusion, various Navy position classifiers found it difficult to understand, or to justify, why new GS–12s in the same job classifications as the grandfathered Portsmouth GS–12s should not also be considered non-exempt. Pls.' App. at 269–81; Kautz Dep. at 30–78.

Plaintiffs here are suing for overtime compensation, liquidated damages, interest, and attorney fees and costs, alleging that the government improperly classified them as FLSA-exempt during the period between the 1995 MOU and the 2001 SSA. Compl. ¶ 1, at 2. The government's motion for summary judgment rests on the affirmative defense

that the MOU, pursuant to the doctrine of accord and satisfaction, serves as a complete bar to Plaintiffs' claims—despite the disparity engendered by the classification of some non-grandfathered GS–12s as non-exempt. Def.'s Mot. at 6. Plaintiffs respond that the government has failed to establish three of the four components of accord and satisfaction: competent parties, meeting of the minds, and consideration. Pls.' X–Mot. at 17.

## III. Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is one that might affect the outcome of the suit. *Id.* at 248, 106 S.Ct. 2505. An issue of material fact is genuine if the evidence is such that a reasonable jury or trier of fact could return a verdict in favor of the non-moving party. *Id.* Initially, the moving party bears the burden of demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party can meet its burden by demonstrating the absence of issues of material fact or by showing the absence of evidence to support the non-moving party's case. *Id.* If the moving party makes such a showing, the burden shifts to the non-moving party to present such evidence. *Id.* at 324, 106 S.Ct. 2548. The non-moving party must present a foundation for facts sufficient to support a verdict in its favor, with all reasonable inferences resolved in its favor. *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1047–48 (Fed.Cir.2000).

Accord and satisfaction has been defined as "a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a

2. According to Catherine Kessmeier of the NAVSEA at the oral argument:

There was a [prior] settlement agreement at Portsmouth Naval Shipyard between the union and the agency. Under that settlement agreement, certain individuals were to be treated as nonexempt. As a result, when we went forward with the global negotiations at all four shipyards, there was a concern that certain individuals retain their rights under the previous settlement agreement. It arose out of the previous settlement agreement.

Hearing Transcript dated April 14, 2004 (hereinafter "Tr.") at 22.

bona fide dispute." *O'Connor v. United States,* 308 F.3d 1233, 1240 (Fed.Cir.2002) (quoting *Nev. Half Moon Mining Co. v. Combined Metals Reduction Co.,* 176 F.2d 73, 76 (10th Cir.1949)). "A claim is discharged by the doctrine of accord and satisfaction when 'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" *Case, Inc. v. United States,* 88 F.3d 1004, 1011 n. 7 (Fed.Cir.1996) (quoting *Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1581 (Fed.Cir.1993)). The four elements of accord and satisfaction must be present: 1) proper subject matter, 2) competent parties, 3) meeting of the minds, and 4) consideration. *O'Connor,* 308 F.3d at 1240.

Defendant relies heavily on *O'Connor v. United States,* a case in which the Federal Circuit affirmed in part and reversed in part a decision of the United States Court of Federal Claims. The Federal Circuit found that individual federal employees can be bound by an accord and satisfaction that was made by a federal agency and the union serving as the employees' exclusive bargaining unit representative. 308 F.3d at 1240–41. Plaintiffs, however, argue that *O'Connor* is inapplicable, as the plaintiffs in *O'Connor* conceded that the global settlement between the government and their union satisfied all four elements of accord and satisfaction. *Id.* at 1240. In contrast, Plaintiffs in this case contest all elements except proper subject matter. Pls.' X–Mot. at 17.[3] Furthermore, since "[a]ccord and satisfaction is an affirmative defense, ... the defendant [is obligated] to satisfy the burden of proof on its motion." *O'Conner v. United States,* 60 Fed.Cl. 164, 168 (2004); *see also Seaboard Lumber Co. v. United States,* 308 F.3d 1283, 1299 (Fed.Cir. 2002). Therefore, if Defendant fails to demonstrate even one of the four elements, its defense fails. *Thomas Creek Lumber & Log Co. v. United States,* 36 Fed.Cl. 220, 238 (1996) (citation omitted).

As the element of proper subject matter has been conceded, Defendant must show that the following elements have been met: (1) competent parties, (2) meeting of the minds, and (3) consideration. However, because there may be significant differences in the analysis of the two groups of Plaintiffs (the grievants and the non-grievants), the court must apply the elements of accord and satisfaction to each group separately. When construing the facts in the light most favorable to Plaintiffs, as the court is required to do, it becomes apparent that Defendant has not met its burden of proving that an accord and satisfaction occurred with regard to the 75 non-grievant Plaintiffs in this case. *Arthur A. Collins, Inc.,* 216 F.3d at 1047–48. Therefore, Defendant's motion must be denied as to these Plaintiffs. Furthermore, Plaintiffs' motion with regard to the 75 non-grievant Plaintiffs must be granted, since the facts when viewed most favorably to Defendant also indicate that no accord and satisfaction has occurred. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, with regard to the 20 grievant Plaintiffs, Defendant's motion for summary judgment must be granted and Plaintiffs' motion denied.

### A. Non–Grievant Plaintiffs

Of the 95 Plaintiffs involved in this action, only 20 had filed grievances as GS–12 employees prior to 1995. The other 75 Plaintiffs, who will be discussed in this section, were either not GS–12 employees at the time of the 1995 MOU or had not filed grievances as of the date of the MOU. Def.'s Resp. to PPFUF ¶¶ 8–9, at 4–5.

#### 1. Competent Parties

■ The first issue is whether these non-grievant Plaintiffs were competent parties to the alleged accord and satisfaction. Plaintiffs argue that the element of competent parties has not been met because, in the 1995 MOU, IFPTE was only representing bargaining unit members who had previously filed grievances as GS–12 employees. Pls.'

---

**3.** As Plaintiffs noted at oral argument: "[T]here was really no analysis in O'Connor [sic] of whether or not in fact the elements of accord and

satisfaction were satisfied, because the Plaintiffs therein admitted that." Tr. at 28.

X–Mot. at 18. Plaintiffs support their assertion by stating that (1) only individual grievances, not union ones, were filed prior to the 1995 MOU; and (2) most of the Plaintiffs in this action had not been involved in litigation or grievances before the 1995 MOU. *Id.* Although Defendant does not dispute these statements, Defendant raises many arguments to support its conviction that the non-grievant Plaintiffs were competent parties to the alleged accord and satisfaction. Def.'s Resp. to PPFUF ¶¶ 8–9, at 4–5; Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Summary Judgment (hereinafter "Def.'s Reply") at 2–4.

The parties agree that IFPTE was the exclusive bargaining agent of all of the Plaintiffs during negotiation of the 1995 MOU. Pls.' Resp. to DPFUF ¶ 5, at 2. However, Defendant asserts that this logically means that the Union was a competent party to bind all bargaining unit members. Def.'s Mot. at 7. In fact, Defendant states that "the union was authorized to file a Union Grievance upon behalf of the plaintiffs, and to enter into a binding settlement agreement resolving the grievance." *Id.*

Although it is true that IFPTE could have filed a Union Grievance, even Defendant admits that IFPTE did not file such a grievance. Def.'s Resp. to PPFUF ¶ 2, at 1. Once again, *O'Connor* provides little guidance, as the *union* in that case had filed FLSA grievances that specifically covered "*all*" unit employees" above a certain grade, while the grievances in the present case were filed only by individual employees. *O'Connor v. United States,* 50 Fed.Cl. 285, 287–88 (2001), *modified* 308 F.3d 1233 (Fed.Cir.2002) (emphasis in original); Pls.' X–Mot. at 18. In addition, as Plaintiffs aptly note: "It is one thing to say that a federal employee union *can* act on behalf of all bargaining unit employees, and another to say that the union has done so in a given instance." Pls.' X–Mot. at 18; *see, e.g., Buckley v. Gallo Sales Co.,* 949 F.Supp. 737, 743 (N.D.Cal.1996) (union acting on behalf of an individual and not the entire bargaining unit).

Defendant also argues that, because certain provisions of the MOU apply to all of the Plaintiffs, all of the Plaintiffs are bound by IFPTE's agreement. Def.'s Reply at 3–4. Defendant is correct in its assessment that certain terms in the MOU affect all Plaintiffs. For example, ¶ 12 establishes an award incentive program and states that "the persons who occupy the positions or who have occupied the positions identified in Attachment D shall be FLSA exempt." Def.'s App. at 10. Since all Plaintiffs hold or have held positions listed in Attachment D, the provisions of ¶ 12 clearly apply to them. *Id.* at 25; Pls.' Resp. to DPFUF ¶ 3, at 2. However, as Plaintiffs note, an agreement can "affect" individuals who are nonetheless not parties to that agreement. Plaintiffs' Reply to Defendant's Response to Plaintiffs' Cross–Motion for Partial Summary Judgment (hereinafter "Pls.' Reply") at 4. For example, many contracts involve third-party beneficiaries, who benefit from the contract but are not actually parties to it. *See, e.g., Montana v. United States,* 124 F.3d 1269 (Fed.Cir.1997).

Ultimately, using the tools of contract interpretation, the Court must find that Defendant has not met its burden of proof on the element of competent parties. First, the court must study the plain meaning of the contract. *Aleman Food Servs. Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir.1993); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). The purpose of this study is to determine the intent of the parties at the time that the contract was made; this controls the contract's interpretation. *Safeco Credit v. United States,* 44 Fed.Cl. 406, 419 (1999). Delving into the parties' intentions can best be done by studying the agreement between the parties. *Greco v. Dep't of the Army,* 852 F.2d 558, 560 (Fed. Cir.1988). However, the contract "must be considered as a whole and interpreted so as to harmonize and give meaning to all of its provisions." *Victory Carriers, Inc. v. United States,* 199 Ct.Cl. 410, 467 F.2d 1334, 1342 (1972); *accord B.D. Click Co. v. United States,* 222 Ct.Cl. 290, 614 F.2d 748, 753 (1980).

Once the MOU is examined, it becomes clear that the IFPTE was not competent to bargain away the rights of all Plaintiffs, and thus no accord and satisfaction could exist with regard to the 75 Plaintiffs who had not

previously been involved in the grievance and litigation procedures as GS–12 employees. First, ¶ 1 of the MOU clearly states that "the terms, conditions and obligations of the parties set forth in this MOU are intended to apply to the court cases *Bow* and *Abundis* ... and to *the FLSA grievances filed* in the IFPTE bargaining units." Def.'s App. at 3 (emphasis added). The use of the phrase "the FLSA grievances filed" is telling, since "the" is commonly used to refer to specific items, and the past tense of a verb is commonly used to denote something that happened prior to the present. The above phrase thus implies that the MOU was intended to apply to *specific* FLSA grievances that had been filed *before* the 1995 MOU.

This interpretation is consistent with the general context of the agreement: (1) the introduction says that the MOU was made "on behalf of employees in the court cases entitled *Abundis v. United States* and *Bow v. United States*, and *the* FLSA grievances in the IFPTE bargaining units"; and (2) ¶ 27 expresses the parties' agreement that "[w]ith regard to *the* FLSA grievances ..., *those* grievances are hereby resolved," but that "FLSA grievances regarding matters addressed in this Global MOU that are filed *after the date this agreement is signed* ... will not be pursued to arbitration by the Union." Def.'s App. at 3, 18; MOU Introduction, ¶ 27, at 1, 16 (emphasis added). Therefore, on its face, the agreement is making a distinction between grievances already filed, which have been resolved, and grievances that might subsequently be filed (such as those of the 75 non-grievant Plaintiffs in this action), which may be resolved later. This supports the conclusion that IFPTE was only representing the GS–12 grievants in the 1995 MOU, and not all bargaining unit members. ·

However, there is one section of the prefatory memorandum to the MOU that could arguably indicate that the IFPTE was representing all members of the bargaining unit. That section describes the MOU as "the best possible agreement to be reached regarding

these grievances *and this issue*." Def.'s App. at 2 (emphasis added). The phrase "and this issue" implies that the MOU resolved some issue other than past grievances. However, since Defendant has the burden of proving that competent parties existed, and since the evidence is heavily weighted in Plaintiffs' favor on this element, the Court must find that no competent parties were present with regard to the 75 Plaintiffs who had not filed GS–12 grievances prior to the 1995 MOU.

### 2. Meeting of the Minds

■ Meeting of the minds is a critical element in the analysis of accord and satisfaction. *McDonald v. United States,* 13 Cl. Ct. 255, 260 (1987). Meeting of the minds is determined by examining the totality of the circumstances. *Texas Instruments., Inc. v. United States,* 922 F.2d 810, 815 (Fed.Cir. 1990). The parties' intent is the factor that controls. *Safeco Credit,* 44 Fed.Cl. at 419 (citation omitted). Therefore, the question here is whether the parties had a meeting of the minds that IFPTE was representing all bargaining unit members, as opposed to the grievants alone.

Defendant, of course, believes that a meeting of the minds occurred. However, Defendant's arguments are quite conclusory. For example, it argues that, "[b]ecause the terms of the MOU demonstrate that the parties intended to resolve the FLSA claims of all employees in the positions occupied by the plaintiffs ..., it is apparent that there was a meeting of the minds." Def.'s Mot. at 9. Defendant also states that "it is plain that the parties reached a meeting of the minds *with regard to the Plaintiffs' FLSA status.*" Def.'s Reply at 6 (emphasis added). Although Defendant's statement appears to be true, it does not really support Defendant's case, since the pertinent question is whether there was a meeting of the minds regarding (1) whether, like the union in *O'Connor,* IFPTE acted "on behalf of [Plaintiffs] to settle their FLSA claims," and (2) whether Plaintiffs had agreed to refrain from filing individual *future* claims.[4]   308 F.3d at 1241.

4. With regard to the 75 non-grievant Plaintiffs, the first issue is dispositive. The second issue shall be discussed in Part III.B.2., *infra.*

When the intent of the parties is examined, it becomes clear that Defendant has failed to meet its burden of proving that meeting of the minds occurred regarding the 75 non-grievant Plaintiffs. The most important indicator of intent is, of course, the agreement itself. *Greco*, 852 F.2d at 560. As discussed in Part II.A.1., above, the language of the 1995 MOU suggests that the parties did not intend for all bargaining unit employees to be bound by the agreement. Furthermore, when examining Defendant's Motion, the Court must look at the facts in the light most favorable to Plaintiffs. *Arthur A. Collins*, 216 F.3d at 1047–48. When Plaintiffs' affidavits are examined, Plaintiffs clearly prevail on this element of accord and satisfaction, as the affidavits indicate that the intent of both parties, at the time of the MOU, was that the MOU would only cover grievants, and not all bargaining unit members.[5] Pls.' App. at 236–38; Affidavit of Gregory K. McGillivary ¶¶ 4–7, at 1–3. In contrast, when the Court turns to Plaintiffs' Cross–Motion, the facts must be viewed most favorably to Defendant. *Arthur A. Collins*, 216 F.3d at 1047–48. When Defendant's affidavits are examined, they show that at least one of Defendant's participants in the 1995 MOU believed IFPTE was representing all bargaining unit employees. Appendix to Def.'s Reply at 6; Declaration of Michael T. McNerney ¶¶ 4–5, at 2. However, since the contract is the primary indicator of intent, the affidavits are not enough evidence that the parties intended the MOU to apply to all bargaining unit employees. Since it was established in Part III.A.1. that the Union was only representing the grievant Plaintiffs when it signed the MOU, the Court finds that no meeting of the minds occurred with regard to the 75 non-grievant Plaintiffs.

### 3. Consideration

Consideration is present if there is a "detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor." *Estate of Bogley v. United*

*States*, 206 Ct.Cl. 695, 514 F.2d 1027, 1033 (1975). The Court finds that no consideration occurred in the 1995 MOU with regard to the 75 non-grievant Plaintiffs, as it has been established above that IFPTE was not representing those Plaintiffs when it agreed to the provisions of the MOU.

### B. Grievant Plaintiffs

■ The same reasoning used above can be applied to the grievant Plaintiffs. However, since these Plaintiffs were actually GS–12 grievants in 1995, the result is different and thus summary judgment for Defendant as to the 20 grievant Plaintiffs is appropriate.

### 1. Competent Parties

Defendant argues that competent parties existed with regard to the 20 grievant Plaintiffs because IFPTE was "one of the parties to the MOU" and the parties' "exclusive bargaining agent." Def.'s Mot. at 7. Plaintiffs admit that "arguably IFPTE was a competent party with regards [sic] to these Plaintiffs." Pls.' Reply at 13; *see also* Pls.' X–Mot. at 19 ("For all but those 20 employees, Defendant has failed to demonstrate the 'competent party' element of accord and satisfaction ...."). Therefore, as there seems to be no dispute regarding IFPTE's representation of the 20 grievant Plaintiffs in the 1995 MOU, the Court finds that the element of competent parties has been established.

### 2. Meeting of the Minds

As noted above, meeting of the minds is a question of law, and a court's finding should be primarily based on the intent of the parties. *Texas Instruments.*, 922 F.2d at 815; *Greco*, 852 F.2d at 560. As discussed in Part III.A.2., the real questions regarding meeting of the minds are (1) whether IFPTE acted "on behalf of [Plaintiffs] to settle their FLSA claims," and (2) whether the grievants agreed to refrain from filing individual *future* claims. 308 F.3d at 1241. In this case, it is clear that the Union was acting "on behalf

---

5. In addition, when the state of the law in 1995 is studied, it becomes clear that before the decision in *O'Connor*, it was generally understood that unions did not have the right to waive employees' rights to pursue further litigation. *Com-*

*pare Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) *with O'Connor*, 308 F.3d at 1241; *see also* Pls.' X–Mot. at 16 n. 6, 22.

of" the grievant Plaintiffs. *See* Part III.B.1. However, the second question is a more complicated one.

First, both parties agree that the MOU did not expressly waive the right to file future individual claims. Def.'s Reply at 6; Pls.' Reply at 5. Nevertheless, Defendant argues: "The [*O'Connor*] court implicitly found that, because the union failed to expressly reserve the right of bargaining unit members to file individual claims for FLSA overtime pay in this Court, the union waived that right." Defendant's Supplemental Brief (hereinafter "Def.'s Supp. Br.") at 3 (discussing *O'Connor*, 308 F.3d at 1240–44). Therefore, according to Defendant, the court, which is bound by the analysis in *O'Connor*, should interpret the MOU's silence on the issues of future claims and reservation of rights as barring Plaintiffs' right to continue this suit.

However, the presence or absence of such a provision is truly immaterial in this case— the key factor is the representative relationship between the union and the *specific, individual* members who filed the grievances. Plaintiffs argue that there were no "accompanying expressions sufficient to make the [grievants] understand, or to make it unreasonable for [them] not to understand, that the performance is offered to [them] as full satisfaction of [their] claim[s] and not otherwise," and thus no accord and satisfaction occurred. Pls.' Reply at 7 (quoting *Chesapeake & Potomac Tel. Co. v. United States*, 228 Ct.Cl. 101, 654 F.2d 711, 716 (1981)). Unfortunately for the grievant Plaintiffs, there was sufficient expression in the MOU to make it unreasonable for them not to realize that the performance offered by the government was made in full satisfaction of their claims. As counsel for Defendant noted at oral argument, Plaintiffs "said, going forward from the effective date of this [MOU], bargaining unit members are FLSA-exempt. That means they don't get FLSA overtime. The very subject of this suit is FLSA overtime for the period covered by this MOU." Tr. at 12; *see, e.g.,* Def.'s App. at 10; MOU ¶ 12, at 8.

In response, counsel for Plaintiffs claimed that "even for people that [sic] were grievants in the 1995 settlement, the union felt, and the Navy agreed, that they really weren't able to negotiate away their statutory rights." Tr. at 40. However, Plaintiffs have already admitted that IFPTE was representing the grievants in the 1995 MOU, so IFPTE was not really "negotiating away" anyone's rights because it had the grievant Plaintiffs' specific consent. Pls.' X–Mot. at 4. Thus, here, as in *O'Connor*, the waiver of claims by the union in ¶ 27 of the MOU is sufficient to show that the parties also intended to waive any individual claims by the 20 grievant Plaintiffs. Accordingly, the Court finds that the element of meeting of the minds has been satisfied.

### 3. Consideration

As discussed above, consideration is present if there is a "detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor." *Estate of Bogley*, 514 F.2d at 1033. Further, as Plaintiffs have noted, consideration will only be deemed present when it has been "fully performed." Pls.' X–Mot. at 24–25; *Chesapeake & Potomac*, 654 F.2d at 716 (quoting 6 Corbin on Contracts 1276 (1962)) ("The two parties may first make an accord executory.... When this executory contract is fully performed as agreed, there is said to be an accord and satisfaction.").

Defendant argues that it provided consideration in the 1995 MOU by providing, *inter alia*, an incentive program for certain classes of exempt employees. Def.'s Mot. at 7; *see* Def.'s App. ¶ 12, at 10. There does not seem to be a dispute that Defendant provided such an incentive program. However, Plaintiffs argue that Defendant promised, but did not fully perform, another form of consideration set forth in ¶ 12: treatment of all GS–12 engineering employees, with the exception of the 20 grandfathered employees, as exempt. Pls.' X–Mot. at 25. Since Plaintiffs claim that Defendant did not treat all GS–12 engineering employees alike, they reason that consideration was not present. *Id.*

Plaintiffs' main argument rests on the following facts: although only the 20 grandfathered employees were to be treated as non-exempt, over time, through personnel "errors," many newly appointed GS–12 engi-

neers were classified as non-exempt. Pls.' X–Mot. at 7–12. Even though these "errors" resulted in a detriment to Defendant, which had to pay additional overtime, Plaintiffs view this as a failure to "satisfy" the "accord." *Id.* at 27. Plaintiffs appear to assert, but do not expressly argue, that Defendant made an implied promise to treat all GS–12 engineers equally. *Id.* (stating that allowing unequal treatment regarding FLSA status was "fundamentally contrary to the Union's obligations to represent all employees in the bargaining unit equally"). As the court said in *Buckley v. Gallo Sales Co.*, "when a union represents an individual in arbitration proceedings, it has to consider the potential interests of all its members." *Buckley,* 949 F.Supp. at 743.

However, even if part of the consideration flowing from Defendant to Plaintiffs was an agreement to treat all GS–12 Engineering Technicians equally, Plaintiffs' argument is undercut by the very language of the MOU: when IFPTE agreed to allow the 20 grandfathered employees to choose to remain FLSA non-exempt, the Union was already agreeing to allow some of its bargaining unit members to be treated in a different manner than others. Def.'s App. at 10–11; MOU ¶ 13 at 8–9.

Furthermore, the MOU contains no language that could possibly imply a requirement to treat *future* GS–12 engineering employees in the same manner as current and past employees. The actual language of ¶ 12 says: "The parties agree that the persons who occupy the positions or who have occupied the positions ... shall be FLSA exempt." Def.'s App. at 10. This language makes it clear that ¶ 12 applies to past and present employees; there is no mention of future employees. The absence of a similar provision regarding future employees indicates that the parties did not intend for ¶ 12 to apply to them. *See Duncan v. Walker,* 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (applying a similar rule in statutory interpretation). Because there was no promise, express or implied, regarding future employees and their FLSA status, the fact that Defendant treated certain *new* GS–12 employees differently from current and past employees is irrelevant as to whether consideration was present for the grievant Plaintiffs. As a result, the Court must find that consideration was present and that the 20 grievant Plaintiffs in this action entered into an accord and satisfaction by agreeing to the 1995 MOU.

## IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is hereby GRANTED IN PART AND DENIED IN PART. Plaintiffs' cross-motion for summary judgment is likewise GRANTED IN PART AND DENIED IN PART. It is therefore ORDERED that the parties shall file a Joint Status Report on or before **October 21, 2004,** which shall discuss the parties' views on how this case should continue.

It is further ORDERED that judgment shall be entered for Defendant as to the 20 grievant Plaintiffs, but Defendant's affirmative defense of accord and satisfaction fails as to the other 75 Plaintiffs.

