**SAFECO CREDIT and Fraley Associates, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 93–314 C.

United States Court of Federal Claims.

July 27, 1999.

Arthur C. Koski, Boca Raton, FL, for Plaintiff.

Andrea I. Kelly, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director, Civil Division, United States Department of Justice, Washington, DC, for Defendant. Alan Caramella, Office of the General Counsel, Department of the Navy, of counsel.

## OPINION AND ORDER

HEWITT, Judge.

This dispute arises out of a 1985 contract for berthing improvements to a naval dock at the Mayport, Florida Naval Station.[1] The case is before the court on the parties'[2] motions for summary judgment and their respective oppositions thereto.

The dispute focuses on two issues. The first issue involves a liquidated damages provision in the contract. Safeco contends that the provisions governing the rate and the calculation of damages, if enforced according to the government's interpretation, would be illegal as a penalty. The second issue is whether or not home office overhead expenses were owed to plaintiff on account of delays and extensions of the project. Safeco contends that it has met the requirements to recover damages under the Eichleay formula. Safeco has moved and the government has cross-moved for summary judgment on both issues. After considering the submissions of both parties, the terms of the contract, and applicable law, the court finds that the government is entitled to summary judgment on both issues.

## I. Background

The facts upon which the court relies are based on plaintiff's and defendant's proposed

---

1. Plaintiff's Appendix, Vol. 1 at 1. The contract was identified as No. N62467–83–C–0216 and is set out in the first volume of both Plaintiff's and Defendant's Appendices at 3–43 ("Contract").

2. The "Navy" and the "government" are used interchangeably throughout this opinion to refer to the defendant. The first named plaintiff, Safeco Credit, was the surety to the contract awardee and succeeded to its responsibilities and interests. By Notice of Assignment dated August 22,

1989, Fraley Associates, Inc., the contractor, assigned "monies due or to become due under the contract" to Safeco Credit pursuant to the Assignment of Claims Act of 1940, 31 U.S.C. § 203 (1988). Plaintiff's Appendix, Vol. 3 at 473. Although there are two named plaintiffs in this case, Fraley Associates, Inc. and Safeco Credit, the plaintiffs are referred to as "Safeco" or "plaintiff" throughout.

findings of uncontroverted facts, each viewed in the light of the allegations made in the other party's statement of genuine issues. *See* Rules of the Court of Federal Claims ("RCFC"), Rule 56(d). In accordance with the standard of review articulated below and, after an examination of the submissions of the parties in this case, as well as the parties' oral arguments, the court finds there are no material facts in dispute.[3]

The contract was divided into seven construction phases identified as 1A, 1B, 2A, 2B, 3A, 3B, and 3C, and a mobilization phase. The mobilization phase and construction phases 1A, 1B, 2A, and 2B ran consecutively. With the exception of phase 1B, which was to begin before the completion of phase 1A, each of phases 1A, 1B, 2A, and 2B had to be completed before work on the next phase could commence. Phases 3A, 3B and 3C ran consecutively to each other, but phase 3A began concurrently with phase 1A. Mobilization activities included preparations for construction including "[f]ield verifications, contract submittals, order[ing] equipment and materials, [and] stockpil[ing] equipment and materials ...." Defendant's Appendix,

Vol. I at 13. Each construction phase was for construction on one berth. *Id.* at 13–14.

The Navy added or changed work on the project by 53 modifications to the contract. Many of the modifications extended the time period for completion of phases 1A, 1B, 2A, and 2B—those phases of the project which (with the exception of phase 1B, which was to begin before the completion of phase 1A) were to run consecutively. The parties disagree about the effect of these modifications on the contract completion dates and, in turn, on Safeco's possible liability for failure to complete the project on time. The government calculated damages based on the dates of completion set forth in the contract and the modifications.[4] If a phase of the project was not completed by the date in the contract, the government assessed liquidated damages for each day of delay beyond the contract completion date for that phase of the project. Plaintiff subtracted the number of days it took to complete a particular phase from the number of days allotted under the contract and the modifications, without regard to completion dates, in arriving at the amount it claims should have been assessed.[5]

---

3. On June 21, 1996, defendant submitted its Motion for Summary Judgment ("Defendant's Motion") to which plaintiff filed a Response and a Cross–Motion for Summary Judgment ("Plaintiff's Response") on November 4, 1996. Defendant filed a Reply to Safeco's Motion for Summary Judgment and a Response to its Cross–Motion for Summary Judgment ("Defendant's Reply") on February 11, 1997. Plaintiff's Reply to the Defendant's Response ("Plaintiff's Reply") was filed on April 15, 1997. Oral arguments were heard on June 23, 1997.

4. The original and modified schedules for completion of the various parts of the project, according to the government, are as follows:

| Phase | Commence | Completion Date | Revised Completion Date |
|---|---|---|---|
| Mobilization | 9/16/85 | 12/15/85 | — |
| 1A | 12/16/85 | 8/31/86 | 1/15/87 |
| 1B | 9/01/86 | 2/28/87 | 10/12/87 |
| 2A | 3/01/87 | 7/31/87 | 7/14/88 |
| 2B | 8/01/87 | 12/31/87 | 7/07/89 |
| 3A | 4/01/86 | 5/31/86 | — |
| 3B | 6/01/86 | 7/15/86 | — |
| 3C | 7/16/86 | 8/31/86 | — |

Defendant's Appendix, Vol. I at 7 (Contract at 01011–2). Modifications affecting phases 1A, 1B, 2A and 2B extended the contract completion dates. The completion date for phase 1A was extended to January 15, 1987. Plaintiff's Appendix, Vol. 1 at 135 (Modification P00037). The completion date for phase 1B was extended to October 12, 1987. *Id.* at 96–97 (Modifications A00018 and A00020). The completion date for phase 2A was extended to July 14, 1988. *Id.* at 110 (Modification P00026). The completion date for phase 2B was extended to July 7, 1989. *Id.* at 169 (Modification P00052).

5. For example, for phase 2A plaintiff added the number of days under the original contract (3/1/87–7/31/87 = 153 days) to the number of days added by the modifications to complete the project (124 days). Plaintiff then subtracted the total number of days allowed under the contract and modifications (277 days) from the number of days it took plaintiff to complete the project (258 days). Plaintiff asserts that, because it took few-

Plaintiff refers only to the number of days by which the contract was extended in each modification, without reference to the actual changed completion date.[6] It interpreted the modifications to extend both the project completion and subsequent commencement dates. If a phase of the project was extended, in plaintiff's view, that extension altered the commencement date for the subsequent phase so that it would begin after the completion date of the previous phase. Plaintiff's Response at 17.

By focusing on the number of days it took plaintiff to complete a particular phase of the project, without reference to the actual completion dates, plaintiff asserts that damages should have been assessed for 66 days for phase 1B, 0 days for phase 2A, and 148 days for phase 2B. Plaintiff's Response at 7.

Defendant calculated damages by reference to the commencement and completion dates of each phase. Where more than one phase was late, defendant assessed damages concurrently. Moreover, with the exception of modification nos. P00014, P00023, P00027, P00052, and P00053 [7], all of the modifications contained accord and satisfaction language which purported to release the Navy from liability on any related claims for equitable adjustment. The government believes that these provisions provide a complete defense

to claims arising under most of the modifications. Defendant's Motion at 17.

The Navy Construction Manual (1985) ("NAVFAC P–68") § 4–212 directs the inclusion of liquidated damages clauses in construction contracts. The government asserts that the damage provisions in the contract for this project contained a rate that was based upon the standard rate for a project of comparable cost plus an upward adjustment based upon the anticipated damages which would be incurred by the Navy in the event of a delay. Safeco asserts that "[t]he upward adjustment was an arbitrary increase lacking any proper justification." [8]

Plaintiff is seeking payment of monies plaintiff believes it is owed under the contract. For phase 1B, the government assessed liquidated damages for 65 days at a rate of $675 per day for a total of $43,875. Safeco asserts that the government should have assessed damages for 66 days at $450 per day for a total of $29,700 and seeks an adjustment of $14,175 from the government for phase 1B. For phase 2A the government assessed liquidated damages for 48 days for a total of $32,400. Safeco asserts that the government should not have assessed any damages for phase 2A because the number of original contract days plus time added by the modifications to complete phase 2A was 277

---

er days to complete the project than allowed under the contract and modifications, it should not have been assessed any liquidated damages for phase 2A. Defendant imposed liquidated damages for phase 2A for 45 days. Defendant arrived at this number by counting the number of days between the revised completion date for phase 2A (7/14/88) and the beneficial occupancy date (8/31/88).

6. Plaintiff created a chart entitled a "[h]istory of time extensions in days" to demonstrate the number of days added to the contract by the modifications. Plaintiff's Response at 6, n. 5. For phase 2A, 124 days were added to the contract by the modifications. Plaintiff states that Modification P00022 added 32 days, P00024 added 7 days, P00025 added 78 days, and P00026 added 7 days. By charting the Modifications in this manner, plaintiff ignores the revised completion dates set forth in the modifications. For example, Modification P00022 states, "[T]he contract time for completion is extended 32 calendar days for Phase 2A from 12 March 1988 up to and including 13 April 1988 and 50 calendar days for Phase 2B from 12 August 1988 up to

and including 1 October 1988." Defendant's Appendix, Vol., I at 88.

7. Modifications P00052 and P00053 contain language that is different from the standard language found in the other modifications. Modification P00052 states:

In consideration of the modification agreed to herein as complete equitable adjustments for the contractor's work involved under Change R–100 and proposal for adjustment, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment.

Plaintiff's Appendix, Vol. 1 at 168. P00053 contains the same language as P00052, except that it references Changes R–101 and R–102 and adds the following at the end; "except for assessed liquidated damages." *Id.* at 172. We discuss the legal effect of this language in Section II.B.2. *See infra* note 18.

8. Plaintiff's Statement of Genuine Issues at 2.

days while plaintiff completed phase 2A in 258 days. Finally, the government assessed damages for phase 2B for 197 days at $1,050 per day for a total of $144,795. During phase 2B the government had taken partial possession and therefore reduced the damage rate by one-half to $735 per day during the period of time of possession.[9] Plaintiff believes it is entitled to a reimbursement of $75,679 for phase 2B. Plaintiff contends that damages for phase 2B should only have been assessed for 148 days at $467 per day. Again, the discrepancy between the view of the government and the plaintiff stems from their differing views as to whether the modifications affected the dates by which—or the number of days within which—performance was to be completed.

In addition to a refund of liquidated damages which Safeco believes was improperly assessed, Safeco asserts an entitlement to home office overhead expenses. The government claims that it paid Safeco $308,028 for extended home office overhead. However, plaintiff asserts that only $15,258.23 was reimbursed, and that the difference lies in the government's erroneous characterization of "indirect cost reimbursement" as equivalent to home office overhead. Plaintiff claims $663,707.47 in home office overhead.

Plaintiff brought a claim in this matter to the contracting officer. The contracting officer issued a final decision on March 23, 1993, denying plaintiff's claim for damages. Plaintiff's Appendix, Vol. 3 at 470–72. In accordance with the Contracts Dispute Act, 41 U.S.C. § 609(a)(1) (Supp.1994), plaintiff appeals the denial of its claim by the contracting officer in this court. The contracting officer's determinations regarding factual matter and matters of law are reviewed de novo by the Court of Federal Claims. 41 U.S.C. § 609(a)(3) (1994).

## II. Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and "the moving party is entitled to judg-

ment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Secretary of Health and Human Services*, 998 F.2d 979, 982 (Fed.Cir. 1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir.1987). Alternatively, if the moving party can show there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all favorable inferences and presumptions run. *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed. Cir.1984).

Even though both parties have moved for summary judgment, the court must still assess the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). Summary judgment will not necessarily be granted to one party or another simply because both parties have moved for summary judgment. *Corman v. United States*, 26 Cl. Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692–93 (4th Cir.1968)). "A cross-motion is a party's claim that it alone is entitled to summary judgment." *A Olympic*

---

9. Modification P00041 states that "[o]n 22 March 1989 the government took use and possession of pier C–1W portion of phase 2B. Therefor [sic], liquidated damages are reduced from $1,050.00 per day to $735.00 per day for the remaining portion of phase 2B only." Defendant's Appendix, Vol. I at 131.

*Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). The rejection of one motion does not necessarily guarantee the support of the other. *Id.* Each motion must be evaluated on its own merit and the court must resolve all reasonable inferences against the moving party. *Id.*

A. Liquidated Damages

Safeco does not dispute that the government is entitled to some liquidated damages due to plaintiff's untimely completion of the project. Plaintiff's Response at 7 (stating the number of days for which plaintiff believes liquidated damages should have been assessed). However, Safeco disputes the way in which liquidated damages were calculated—both as to the rate and as to the number of days. *Id.* at 2.

1. Amount of Damages Designated in Contract

Safeco asserts that the liquidated damages clause in this contract set damages at a rate higher than that permitted under defendant's own regulations and, therefore, operated as a penalty. Plaintiff's Response at 21, n. 9. In particular, Safeco contends that the government failed to establish this project as an "exceptional case" that would have justified an upward adjustment in the level of damages. *Id.* at 22. Defendant claims that it clearly followed its own procedures in establishing the liquidated damage rate. Defendant's Reply at 6. Furthermore, the government asserts that "[p]laintiff's argument that the Government bears the burden of establishing actual damages to a certainty ignores the fact that liquidated damages are designed to avoid such a requirement." *Id.*

■ When the amount of damages is difficult to predict, a liquidated damages clause will generally be upheld unless the court determines that the parties must have intended a penalty rather than liquidated damages. *See Wise v. United States,* 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919); *United States v. Bethlehem Steel Co.,* 205 U.S. 105, 121, 27 S.Ct. 450, 51 L.Ed. 731 (1907); *DJ Mfg. Corp. v. United States,* 86 F.3d 1130, 1133 (Fed.Cir.1996). "When damages are uncertain or difficult to measure, a

liquidated damage clause will be enforced as long as 'the amount stipulated for is not so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression.'" *DJ Mfg. Corp.,* 86 F.3d at 1133 (quoting *Wise,* 249 U.S. at 365, 39 S.Ct. 303). *Accord P & D Contractors, Inc. v. United States,* 25 Cl.Ct. 237, 240 (1992) (granting summary judgment to the government on plaintiff's claim for reduction in withholding of liquidated damages).

■ In regard to the reasonableness of the liquidated damage amounts set by the government for this project, defendant relied on the Navy Contracting Manual, NAVFAC P–68. Defendant's Motion at 4. ˙The government is entitled to the presumption that damages assessed in accordance with the NAVFAC P–68 are reasonable. *P & D Contractors, Inc.,* 25 Cl.Ct. at 240. Section 4–212 states in pertinent part:

A liquidated damages clause shall be included in all construction contracts in excess of $25,000 except cost-plus-fixed-fee contracts or those where the contractor cannot control the pace of the work .... Where different completion dates for separate parts or stages of the work are specified in the contract, this clause should be revised appropriately to provide for liquidated damages for delay of each separate part or stage of the work .... In an exceptional case liquidated damages may be varied when the OICC [Officer in Charge of Construction] determines that the Government's anticipated loss from delayed completion is estimated to be significantly in excess of these amounts. In such an exceptional case, a justification for each exceptional determination (including arithmetical computations) shall be made for the files and liquidated damage variations exceeding 50 percent shall require prior NAVFACENGCOM [Naval Facilities Engineering Command] approval.

Defendant's Appendix, Vol. II at 279–80. The contract provided for liquidated damages

for each phase of the project separately.[10] The justification for an exception to the standard rate was made in accordance with the NAVFAC P–68 and addressed each of the requirements. *Id.* at 276–78. By its terms, the NAVFAC P–68 § 4–212 requires the inclusion of a liquidated damages provision for the type of contract performed in this case and further provides that varying the liquidated damages rate is a matter within the discretion of the OICC.

Safeco has the burden to establish that the liquidated damages clause in this contract was intended to operate as a penalty.[11] In order to determine whether a contract provision provides for liquidated damages or whether it is in fact a penalty, it is necessary to make three inquiries. The first is whether the parties intended liquidated damages or a penalty. *Wise v. United States*, 249 U.S. at 365, 39 S.Ct. 303; *Higgs v. United States*, 212 Ct.Cl. 146, 546 F.2d 373, 377 (1976). Here, the terms of the contract itself evidence the parties' intent to provide for liquidated damages and not a penalty. Neither party was unaware of the contract's contents. Plaintiff admitted during oral argument that the rate increase was in the bid documents and, therefore, was not a surprise. Transcript from Oral Argument at 42. Absent surprise, the contract terms are evidence of the parties' intent.

The second determination is whether the amount of damages that would be caused by a breach is uncertain in amount or difficult to determine. *Higgs*, 546 F.2d at 377. *See* Restatement (Second) of Contracts § 356 cmt. b (1981) ("The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty . . . the easier it is to show that the amount fixed is reasonable."). Since the va-

lidity of a liquidated damage provision is determined as of the time it was made, rather than at the time of breach, we examine the damages anticipated at the time the contract was executed. *See Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 412, 68 S.Ct. 123, 92 L.Ed. 32 (1947); *Skip Kirchdorfer, Inc. v. United States*, No. 14–80C, 1981 WL 30791, at *4 (Ct.Cl. Nov. 6, 1981). At that time there was no way to quantify the effects a delay in the contract, and therefore the readiness of a ship berth, would have on the Navy. In support of its concerns over potential delays, the government listed the following as potential complications to the Navy in the event of a breach:

> Anticipated concerns regarding the cost to the Navy of any construction delay included the following: (1) impact on ship berthing; (2) the impact to ongoing ship repair activity; (3) the fuel cost of having a ship at sea as opposed to docked awaiting repairs; and (4) any additional costs associated with ship repair contracts if the ship is kept at sea due to unavailability of ship berthing.

Defendant's Proposed Findings Of Uncontroverted Fact at ¶ 10; Defendant's Appendix, Vol. II at 277–78. The amount of costs to the Navy associated with these factors was not definitely ascertainable at the time of contracting. This is further evidenced by a June 6, 1985 memorandum which refers to the phases of the contract and states that "[l]iquidated damages for each phase should be increased by the maximum amount (50%) because this is work of a very critical nature which directly affects the readiness of the U.S. Navy fleet. . . . the absolute minimum damages to the Navy will far exceed the normal liquidated damages specified by the

**10.** Paragraph 6 of the contract states:

> If the Contractor fails to complete the work within the time specified for each phase in the contract, or any extension, the Contractor shall pay to the Government as liquidated damages, the sums listed below for each calendar day of delay. In the event that more than one phase of work is in arrears at the same time, damages will be assessed concurrently.

| PHASE: MOBILIZATION: | $ . –0– |
| PHASE: 1A | $ 675.00 |

| | |
|---|---|
| PHASE: 1B | $ 675.00 |
| PHASE: 2A | $ 675.00 |
| PHASE: 2B | $ 1,050.00 |
| PHASE: 3A | $ 37.00 |
| PHASE: 3B | $ 37.00 |
| PHASE: 3C | $ 37.00 |

Defendant's Appendix, Vol. I at 7.

**11.** "A party challenging a liquidated damages clause bears the burden of proving the clause unenforceable." *DJ Mfg. Corp.*, 86 F.3d at 1134.

FAR." Defendant's Appendix, Vol. II at 277–78.

■ Finally, the amount of damages must bear a reasonable relationship to actual damages that could be sustained in the event of a breach. *Higgs*, 546 F.2d at 377. *See* Restatement (Second) of Contracts § 356 cmt. b (1981) ("[T]he amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss."). Plaintiff failed to challenge the contract on this point at the time of execution. .Furthermore, even if the amount of damages might be greater that the actual damages incurred, that alone does not make the liquidated damage rate per se unreasonable. *Priebe & Sons, Inc.*, 332 U.S. at 412, 68 S.Ct. 123; *Bethlehem Steel Co.*, 205 U.S. at 121, 27 S.Ct. 450; *P & D Contractors, Inc.*, 25 Cl.Ct. at 241.

■ It is Safeco's burden to prove that the liquidated damages clause operated as a penalty. Plaintiff has failed to meet this burden. Plaintiff has mistakenly attempted to place the burden of proving that the damage rate was reasonable on defendant. *See* Plaintiff's Response at 22; Plaintiff's Reply at 5–6. The only evidence plaintiff has proffered to support its argument that the damage rates are unreasonable is a generalized statement that this contract did not represent an exceptional case where an increased rate of damages would be justified. Plaintiff's Response at 22. Given plaintiff's failure to show otherwise, this court finds that the liquidated damages clause set out in the contract was valid and did not operate as a penalty.

2. Time Period For Which Damages Should Be Imposed

The parties also dispute the duration of the delay for which damages should be imposed. The dispute centers on the parties' conflicting interpretations of the following portion of the liquidated damage clause:

Liquidated Damages—Construction (Phased Work): If the Contractor fails to complete the work within the time specified for each phase in the contract, or any extension, the Contractor shall pay to the Government as liquidated damages, the sums listed below for each calendar day of delay. In the event that more than one phase of the work is in arrears at the same time, damages will be assessed concurrently.

Defendant's Appendix, Vol. I at 7. The government calculated damages based on the dates of completion set forth in the contract and the modifications.[12] If a phase of the project was not completed by the date in the contract, the government assessed liquidated damages for each day of delay beyond the contract completion date for that phase of the project. Safeco interpreted the modifications to extend both the project completion and subsequent commencement dates. Plaintiff's Response at 17. If a phase of the project was extended, in Safeco's view, that extension altered the commencement date for the subsequent phase so that it would begin after the completion date of the previous phase. *Id.* Safeco's interpretation would greatly reduce the amount of damages that could be assessed under the contract.

In support of its reading of the contract, Safeco argues that the project was not driven by any particular requirement for completion which drove a project deadline. *Id.* at 22. In addition, Safeco asserts that the 53 modifications to the project were initiated by the government and, in .fact, the contract's commencement date was delayed by the government because the contract was not awarded until after the designated commencement date. *Id.* Finally, Safeco argues that, because the government assessed damages at rates higher than those in the standard schedule, it was fully compensated for any delays. *Id.* at 20. Defendant asserts that, in making these arguments, plaintiff ignores the purpose of liquidated damages, which is to avoid having to prove with certainty that the anticipated amount of damages corresponds with the actual damages incurred as a result of a breach. Defendant's Reply at 7.

■ In order to determine the correct method for computing liquidated damages under this contract, the court looks to the

12. *See supra* note 4.

plain language of all of the relevant contract provisions. *See Aleman Food Servs., Inc. v. United States,* 994 F.2d 819, 822 (Fed.Cir. 1993); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991). The relevant provision of this contract expressly provides for time extensions. It states:

> Notwithstanding any other provisions of this contract it is mutually understood that the time extensions for changes in the work will depend upon the extent, if any, by which the changes cause delay in the completion of the various elements of construction. The change order granting the time extension may provide that the contract completion date will be extended only for those specific elements so delayed and that the remaining contract completion dates for all other portions of the work will not be altered and may further provide for an equitable readjustment of liquidated damages pursuant to the new completion schedule. (DAR 7–603.36)

Defendant's Appendix, Vol. I at 34. The plain language of this contract provision is inconsistent with the plaintiff's interpretation of the contract. A change in the completion dates for one phase of the contract "may provide" as here, for extension of completion dates for only some portions of the contract work without affecting the commencement and completion dates for other portions of the contract work. For a phase to be affected, the language of a contract modification must explicitly state the intent to change the completion date of that phase.

 The terms of the contract modifications at issue here make it clear that a change in the completion date for one phase of the contract does not lengthen the period of time in which a subsequent phase was to be completed, unless expressly provided. Each modification in which a change was made specifies the phases affected and the new completion date(s). For example, Modification P00010 describes the change order work to be completed and further states that "[t]he contract amount is herefor changed to read from $9,885,812.00 to $9,896,018.00, a net increase of $10,206.00 and the contract completion date is extended 3 calendar days up to and including 87MAY08 for Phase 1B,

87OCT08 for Phase 2A, and 88MAR10 for Phase 2B." Plaintiff's Appendix, Vol. 1 at 75. This language provides unambiguously for extended completion dates for each phase specified. The court finds that the plain meaning of the contract language is consistent with defendant's view that the government is entitled to the assessment of liquidated damages for delays beyond the dates that each phase was specifically extended in accordance with the contract terms. *See Aleman Food Servs., Inc.,* 994 F.2d at 822.

The interpretation of the contract language is a question of law for the court. *See, e.g., Cienega Gardens v. United States,* 162 F.3d 1123, 1130 (Fed.Cir.1998). The court finds that both the amount of liquidated damages designated in the contract and the number of days for which damages were assessed by the government is in accord with the parties' agreement and applicable law. Therefore, the court grants the government summary judgment on this issue and denies plaintiffs recovery of any of the liquidated damages withheld by the government.

**B. Home Office Overhead**

Safeco also contends that it is entitled to reimbursement for home office overhead as a result of extensions to the project. Plaintiff's Response at 23. Safeco asserts that the total amount due under the Eichleay formula totals $663,707.47. *Id.* at 26–27. The government asserts that Safeco fails correctly to apply the Eichleay formula and that plaintiffs were compensated for extended home office overhead in the modifications. Defendant's Reply at 23–27. We find the government's arguments persuasive.

**1. Eichleay Formula**

 The Eichleay formula was created to calculate home office overhead costs to be reimbursed if work on a contract was suspended, and if that suspension decreased "the stream of direct costs against which to assess a percentage rate for reimbursement." *C.B.C. Enters. v. United States,* 978 F.2d 669, 671 (Fed.Cir.1992). Home office overhead costs are those costs that are expended for the benefit of the whole business and cannot be attributed to any particular contract. *See*

*Altmayer v. Johnson,* 79 F.3d 1129, 1132 (Fed.Cir.1996); *Wickham Contracting Co. v. Fischer,* 12 F.3d 1574, 1578 (Fed.Cir.1994) (Costs which can be attributed to a particular contract are direct costs.). In *Wickham,* the Federal Circuit ruled that the Eichleay formula was the "only proper method for calculating unabsorbed home office overhead." *Wickham,* 12 F.3d at 1575. The formula "seeks to equitably determine allocation of unabsorbed overhead to allow fair compensation of a contractor for government delay." *Id.* at 1578. (citing *Eichleay Corp.,* ASBCA No. 5183, 60–2 B.C.A. (CCH) ¶ 2688, 13,573, 1960 WL 538 (July 29, 1960), *aff'd on recons.,* 61–1 B.C.A. (CCH) ¶ 2894, 1960 WL 684 (Dec. 27, 1960)). The formula provides a method of constructively calculating daily extended home office overhead, using contract billings, total billings for the contract period, total overhead, days of contract performance, and days of delay. *Eichleay Corp.,* 60–2 B.C.A. (CCH) ¶ 2688 at 13,568. It "approximates extended home office overhead costs by calculating a daily overhead dollar amount for the contract in question and multiplying that figure by the number of days of delay." *Altmayer,* 79 F.3d at 1132–33.

■ In order to recover unabsorbed overhead a contractor must satisfy two prerequisites. *West v. All State Boiler, Inc.,* 146 F.3d 1368, 1373 (Fed.Cir.1998). First, the contractor must be on "standby."[13] *Id.* (quoting *Interstate Gen. Gov't Contractors v. West,* 12 F.3d 1053, 1056 (Fed.Cir.1993)). Second, the contractor must be unable to take on other work while on standby. *See All State Boiler,* 146 F.3d at 1373; *Satellite Elec. Co. v. Dalton,* 105 F.3d 1418, 1421 (Fed.Cir.1997); *Interstate Gen.,* 12 F.3d at 1056. If the contractor meets its burden of production on these elements and makes a prima facie case for recovery under Eichleay, "[t]he burden then shifts to the government to present rebuttal evidence or argument

showing that the contractor did not suffer or should not have suffered any loss because it was able to either reduce its overhead or take on other work during the delay." *Mech–Con Corp. v. West,* 61 F.3d 883, 886 (Fed.Cir.1995).

The first prerequisite to use of the Eichleay formula is the occurrence of a government-imposed delay which places the contractor on standby. *All State Boiler,* 146 F.3d at 1373. The parties directly address whether a government-imposed delay occurred. Safeco asserts that Eichleay applies to contract extensions which cause uncertainty as to future performance on a project, as well as suspensions. Plaintiff's Reply at 7–9. Safeco also alleges that the government's conduct, evidenced by the number of modifications[14] to the contract, created uncertainty in the length of performance of the contract. *Id.* at 9–10. The government contends that plaintiff performed additional work throughout the extension period and therefore was not on "standby." Defendant's Motion at 25; Defendant's Reply at 24–25.

■ The standby test requires a determination of whether the delay or suspension of the contract for an uncertain period of time required the contractor to stand ready to perform to the exclusion of other potential work. *See All State Boiler, Inc. v. West,* 146 F.3d 1368, 1373 (Fed.Cir.1998) (citing *Interstate Gen.,* 12 F.3d at 1058); *Mech–Con,* 61 F.3d at 886 (Eichleay damages are awarded to a contractor when a government imposed delay prevents the contractor from allocating its resources to a new project.). What must be proven is that there was "a suspension of work caused by the government, and that the duration of the suspension—and consequently, the additional time necessary to complete performance—was uncertain." *All State Boiler,* 146 F.3d at 1381.

**13.** A contractor is on standby if work on a project is suspended for an uncertain period of time and the contractor can be required to resume work immediately at any time. *See Interstate Gen.,* 12 F.3d 1053, 1058.

**14.** Safeco's claim for home office overhead is based upon the contract modifications. Mr. Kenneth Painter, an agent of Ackerman Con-

struction, a construction company retained by Safeco as a consultant on the project, stated during deposition testimony that "[t]he claim is based upon the overall effect of all of the contract—all 53 modifications and the 80 some. odd changes that were made in the contract." Defendant's Appendix, Vol. III at 458–59.

■ Safeco misinterprets Federal Circuit precedent by asserting as a general rule that "Eichleay applies to contract extensions in addition to suspensions." Plaintiff's Reply at 8. The case cited by plaintiff, *Altmayer v. Johnson*, 79 F.3d 1129, 1134 (Fed.Cir.1996), involved an extension of a project due to the government's failure timely to select carpet and wood finishes for the "build out" of a space which was to be used as a United States Attorney's office. *Id.* at 1131. The court found that the government's procrastination and nonresponsiveness made the length of the performance period uncertain. *Id.* at 1134. Furthermore, the court determined that there was not substantial evidence that the plaintiff performed additional work. *Id.* Although *Altmayer* addressed the possible application of Eichleay to contract extensions, the facts and circumstances of that case are strikingly different from those the court now reviews.

In this case the contract was extended as a result of modifications issued by the government. These modifications did not suspend work, but rather required plaintiff to perform additional and change order work for which it was given additional compensation.[15] The Federal Circuit has determined that "Eichleay was not applicable to a situation involving additional work due to contract modifications as opposed to 'a suspension or hiatus in performance which would affect direct costs' because '[t]here was no evidence that the contract changes resulted in a delay in performance which required [the contractor] to stand by idly and suspend its work.'" *Interstate Gen.*, 12 F.3d at 1057 (quoting *Community Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1582 (Fed.Cir.1993)). Unlike *Altmayer*, the work performed by Safeco during the period of suspension was significant. It was not "minor items 'susceptible to

prompt completion.'" *Altmayer*, 79 F.3d at 1134. Furthermore, the modifications added by the government did not make the length of performance uncertain.[16] Rather, the modifications expressly set forth dates by which the contract was lengthened.

The second prerequisite to use of the Eichleay formula requires that the contractor be unable to take on additional work. *Interstate Gen.*, 12 F.3d at 1056. To make a proper showing under the second prong of the Eichleay test, "the government must rebut a contractor's prima facie case by showing either (1) that it was not impractical for the contractor to obtain other work to which it could re-allocate its indirect costs, or (2) that the contractor's inability to obtain other work was caused not by the government's suspension but by some other circumstance . . . ." *All State Boiler*, 146 F.3d at 1376.

In support of its assertion that plaintiff was unable to take on additional work, Safeco cites a statement made by its president, Peter Caruk. In response to a government interrogatory, Mr. Caruk stated that "[t]hese suspensions prevented Fraley from undertaking any other work. Plaintiff's resources (employees, equipment and finances) were committed to the completion of this project. Other work could not be bid because of the unavailability of manpower, equipment and/or bonding capacity." Plaintiff's Reply at 10. The government addresses each of plaintiff's points based on uncontested evidence—the terms of the modifications themselves. Furthermore, the government states that the very fact that Safeco was able to do the change order work demonstrates that the contractor was not prevented from doing additional work as would be required by Eichleay. Defendant's Motion at 27. Accordingly, plaintiffs have not shown that they

---

**15.** The government points out that Safeco has received $308,028 for extended home office overhead because the change orders included that amount calculated as a percentage mark up of the direct costs of the change orders. Defendant's Motion at 22. *See P.J. Dick, Inc.*, GSBCA No. 12,058, 96–1 B.C.A. (CCH) ¶ 28,188 (1996) ("Where the contractor is paid a percentage home office overhead markup with respect to direct costs incurred during the same period over which the Eichleay award has been computed, the fixed expense portion of that mark-up

must be subtracted from the amount computed pursuant to Eichleay.") (quoting *R.G. Beer Corp.*, ENGBCA No. 4885, 86–3 B.C.A. (CCH) ¶ 19,012, 96,031–96,032 (1986)). Safeco does not contest that it received these amounts, but claims it is entitled to more. Plaintiff's Response at 27.

**16.** The modifications clearly set forth the extended deadlines for the affected phases of the project. *See supra* note 6.

could not have taken on any other jobs during the contract period.

The government also argues that, even if Safeco could avail itself of the Eichleay formula, its proposed use of the formula to calculate damages is fundamentally flawed. The proper formula "involves an allocation of the total recorded main office expense to the contract in the ratio of contract billings to total billings for the period of performance. The resulting determination of contract allocation is divided into a daily rate, which is multiplied by the number of days of delay to arrive at the amount of the claim." *Satellite Elec.*, 105 F.3d at 1420 (citing *Eichleay*, 60–2 B.C.A. at ¶ 13,754).

Safeco attempts to divide its Mayport construction costs by the total company construction costs. Defendant's Reply at 25–26. In determining its figures, Safeco included variable costs and unallowable costs in the overhead pool.[17] *Id.* at 26 (citing the DCAA's audit of plaintiff's Eichleay damages claim). Safeco failed to eliminate the variable expenses in computing its recoverable costs. Defendant's Appendix, Vol. III at 413. "*Only fixed expenses* are recoverable under the proper computation of the Eichleay formula. Variable expenses should be eliminated as these expenses are under the control of the contractor during an extended contract period and are usually reduced or allocable to work at other construction sites." *Id.* at 414. *See R.G. Beer Corp.*, ENGBCA No. 4885, 86–3 B.C.A. (CCH) ¶ 19,012 (1986) (only fixed overhead expenses should be used in computing the Eichleay award).

Safeco asserts that the various change orders and extensions " 'cast a cloud of uncertainty over the length of the performance period of the contract.' " Plaintiff's Reply at 8–9 (quoting *Altmayer*, 79 F.3d at 1133). Because of the 53 modifications and various

extensions of completion dates on the contract, its "stream of income was reduced and disrupted." Plaintiff's Response at 24. Safeco cites examples of ways in which the modifications created uncertainty. Plaintiff's Reply at 9–10. Through the testimony of Safeco's president, Peter Caruk, plaintiff claims it was unable to take on other work during the period of time the contract was extended. *Id.* at 10. Mr. Caruk's unsubstantiated and conclusory statement is the only evidence cited by plaintiff which supports its assertion that plaintiff was unable to take on additional work. His unsubstantiated and conclusory remarks are insufficient to preclude summary disposition in favor of the government.

The modifications to the contract required plaintiff to perform change order work for which it was compensated; the revised completion dates were clearly set forth in the modifications. Furthermore, aside from the unsubstantiated conclusory allegation of Safeco's president, plaintiffs have failed to show an inability to take on other work. *See* Plaintiff's Reply at 10. Unlike other cases the Federal Circuit has decided, the element of uncertainty is absent in the case before us. *See, e.g., Altmayer*, 79 F.3d at 1133–34. Accordingly, the Navy is not liable for Eichleay damages.

## 2. Accord and Satisfaction

Even if Safeco's Eichleay claim were meritorious, it is barred by accord and satisfaction. Safeco asserts that its claim is not barred by accord and satisfaction because there was no meeting of the minds between plaintiff and the government. Plaintiff's Response at 30. The government asserts that the accord and satisfaction language in the

---

17. The DCAA audited the methods used by Safeco to generate its figures for Eichleay damage calculations. The DCAA questioned the figures used by plaintiff in calculating damages in this case. Plaintiffs cite the audit as saying, "[t]he general concept of the Eichleay formula is acceptable for the purposes of the claim ...." Plaintiff's Response at 24 (quoting Plaintiff's Appendix, Vol. 2 at 226). The sentence continues, however, to say, "we [DCAA] take exception to the contractor's methodology used to develop the allocable home office costs." Plaintiff's Appendix, Vol. 2 at 226. The audit states:

> [T]he cost or pricing data submitted by the contractor are not adequate. The contractor's proposal was not prepared in accordance with appropriate provisions of DAR and/or FAR and DFARS. Therefore, we do not consider the proposal to be acceptable as a basis for negotiation of a fair and reasonable price ....

Plaintiff's Appendix, Vol. 2 at 223.

modifications to the contract is clear and comprehensive. Defendant's Motion at 18.

Accord and satisfaction is a means to discharge an existing right. *See Chesapeake & Potomac Tel. Co. v. United States*, 228 Ct.Cl. 101, 108, 654 F.2d 711 (1981); *King Fisher Marine Serv., Inc. v. United States*, 16 Cl.Ct. 231, 236 (1989). *See also* 6 Arthur L. Corbin, *Corbin On Contracts* § 1276 (1962). To invoke the existence of an accord and satisfaction, the government must prove that a modification to the contract constitutes an accord and the subsequent performance constitutes the satisfaction. *See McLain Plumbing & Elec. Serv., Inc. v. United States*, 30 Fed.Cl. 70, 80 (1993); *McDonald v. United States*, 13 Cl.Ct. 255, 260 (1987). "The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration." *Brock & Blevins Co. v. United States*, 170 Ct.Cl. 52, 59, 343 F.2d 951 (1965) (quoting *Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73, 76 (10th Cir.1949)); *King Fisher*, 16 Cl. Ct. at 236; *C & H Commercial Contractors v. United States*, 35 Fed.Cl. 246, 252 (1996).

It is clear that the subject matter of the modifications was appropriate. It directly related to the work being performed by plaintiff under the contract. Furthermore, both parties were competent; and consideration was given by both parties. Plaintiff does not challenge the existence of these elements. However, plaintiff does assert that "there was no meeting of the minds between [plaintiff] and the [g]overnment with respect to accord and satisfaction barring overhead." Plaintiff's Response at 30.

As in many contract cases where accord and satisfaction is the government's asserted defense, "this case requires the court to rule on whether there was a meeting of the plaintiff's and the Government's minds. Without agreement, the parties did not reach an accord. This determination is a question of law." *XXX Construction Co. v. United States*, 16 Cl.Ct. 491, 498 (1989) (citing *Merritt–Chapman & Scott Corp. v. United States*, 198 Ct.Cl. 223, 230, 458 F.2d 42 (1972)). The intent of the parties controls in determining if there was a meeting of the minds. *McLain Plumbing*, 30 Fed.Cl. at 81. "[T]he contract modification represents the best source of evidence regarding intent." *Id.*

The relevant language in the modifications states:

Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full (for both time and money) for any and all costs, impact effect, and/or delays arising out of, or incidental to, the work as herein revised and the extension of the contract completion time.[18]

*See, e.g.*, Defendant's Appendix, Vol. I at 93, 95 (Modifications P00024 and P00025). The court cannot import ambiguity into unambiguous language. "The parol evidence rule ... prevents the court from considering evidence of prior dealings, on a motion for summary judgment or otherwise, when put forth for the purpose of varying the meaning of clear, unambiguous language." *King Fisher*, 16 Cl.Ct. at 234.[19] *See Peterson–Sharpe Engi-*

---

**18.** Modification P00052 provides.

In consideration of the modification agreed to herein as complete equitable adjustments for the contractor's work involved under change R–100 and proposal for adjustment, the contractor hereby releases the government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment.

Defendant's Appendix, Vol. I at 156–57. Similarly, Modification P00053 provides:

In consideration of the modification agreed to herein as complete and equitable adjustments for the Contractor's work involved under Changes R–101 and R–102 and proposal for

adjustment, the Contractor hereby releases the Government from any and all liability under this contract for further equitable adjustments attributable to such facts or circumstances giving rise to the proposal for adjustment except for assessed liquidated damages.

Defendant's Appendix, Vol. I at 158–60. The court interprets the phrase "except for assessed liquidated damages" to mean that the government is not released from the portion of R–101 that decreased the amount of liquidated damages assessed against the contractor.

**19.** In *King Fisher*, the relevant language in the disputed modification was the following:

This modification constitutes compensation in full on behalf of the contractor and its subcon-

*neering Corp. v. United States*, 6 Cl.Ct. 288, 295 (1984). Neither can parol evidence be used by a party to create contractual ambiguity. *King Fisher*, 16 Cl.Ct. at 234. Plaintiff's allegation of its intent not to waive a claim when it signed the modifications is insufficient to raise a genuine issue of material fact so as to preclude summary judgment for the government. *Mingus Constr. Inc. v. United States*, 812 F.2d 1387, 1394 (Fed.Cir. 1987) (claim cannot be reserved and asserted on the basis of intent alone); *Progressive Bros. Constr. Co. Inc. v. United States*, 16 Cl.Ct. 549, 551–53 (1989). Plaintiff here must show something more than "subjective intent" in order to preclude summary judgment for defendant on its defense of accord and satisfaction.

█ Safeco's defense against accord and satisfaction turns on whether the court accepts Safeco's assertions that it was systematically misled by authorized representatives of the Navy. Plaintiff contends that its claims are not barred by the accord and satisfaction language in the modifications because "several named government officials, with required authority, assured [plaintiff] that [plaintiff] could later seek an equitable adjustment of home office overhead despite the accord and satisfaction language contained in the modifications." Plaintiff's Reply at 12. Specifically, Safeco argues that Lieutenant Elkins, the Assistant Resident Officer in Charge of Construction (AROICC), had the authority to bind the government in contract, and did so by orally "granting [plaintiff] the right to seek an adjustment for home office overhead at the end of the project." Plaintiff's Reply at 13. Defendant contends that Safeco's allegations regarding oral representations made by government employees are flawed because the individual identified by Safeco lacked contracting authority. Defendant's Reply at 12.

First, the court must determine whether Elkins was in fact vested with authority to bind the government in contract. Plaintiff cites a section of the contract itself that designates the AROICC as "the authorized representative of the Contracting Officer." Plaintiff's Reply at 12 (citing Plaintiff's Appendix, Vol. 1 at 37–38). The Contracting Officer (CO), in turn, "shall mean the Commander, Naval Facilities Engineering Command, the Acting Commander, their successors, or their representatives specially designated for this purpose." *Id.* The AROICC position is not mentioned in this contract provision, yet plaintiffs assert that "Elkins, as an authorized representative of the [CO], had authority to bind the Government with regard to the project." Plaintiff's Reply at 12. Defendant challenges plaintiff's interpretation with a citation to the NAVFAC Manual § 1–401 (CO Authority), which states that only Contracting Officers have the authority to "enter into, modify, and/or terminate contracts." Defendant's Reply at 14.

Safeco further argues that Elkins had the necessary contracting authority because his signature appeared on 13 payment invoices to plaintiffs. These invoices were "standard forms prepared by the Navy." Plaintiff's Reply at 13. The fact that these forms were standard is evidenced by Safeco's statement in the same paragraph that "Elkins' authority extended to the negotiations of payments during the project." *Id.* However, Elkins did not sign any of the modifications executed by the Navy and Safeco during contract performance. Safeco's current claims are not based on the integrity of the payment invoices, but on the modifications. Safeco seeks to show that no accord and satisfaction existed with respect to any overhead costs provided for in the modifications. Elkins had no apparent role in the modifications, their negotiation, or their execution. Plaintiffs therefore must rely on the concept of

tractors and suppliers for all costs and markups directly or indirectly attributable to the changes ordered herein, for all delays related thereto and for performance of the changes within the time stated.

*King Fisher*, 16 Cl.Ct. at 234. The court found that a meeting of the minds and accord and satisfaction existed concerning any claims aris-

ing from the relevant change order. *Id.* In *King Fisher*, the court was unwilling to consider parol evidence that either "disprove[d] [plaintiff's] major thesis" or failed to contain "one scintilla of probative evidence" that some claims were not included in (the *King Fisher*) plaintiff's proffered letters. *Id.* at 235.

"implied actual authority," an authority that Safeco has the burden to prove with respect to Elkins.

This court, in *Cruz–Pagan v. United States,* 35 Fed.Cl. 59, 60 (1996), defined "implied actual authority" as a substitute for the expressed actual authority a plaintiff must show in order to hold the government bound by an act of one of its agents. Generally, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* (quoting *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947)). Thus, if plaintiff were simply mistaken about Elkins' authority, his statements to them concerning their rights to recover additional overhead costs cannot prevent the dismissal of their claims due to accord and satisfaction. Plaintiff must show that Elkins had authority to modify the terms of the modifications, and that such authority "is considered to be an integral part of the duties assigned to [him as a government employee]." *Cruz–Pagan,* 35 Fed.Cl. at 61 (quoting *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir. 1989)).

Under this standard, plaintiff has shown nothing to indicate that Elkins had the authority to enable him orally to alter the modifications so as to nullify the effect of the clear contract terms providing for accord and satisfaction. Elkins' signature appeared on payment invoices. Authority to enter and modify contracts was neither "necessary [nor] essential" in order for him to affix his signature as "Authorized Certifying Officer" for payment invoices. In addition, the NAV-FAC's specific grant of contracting authority to Contracting Officers precludes a finding that Elkins held complete actual authority. "[I]n situations where, as here, an agency adopts internal procedures that preclude the employee from exercising such authority, it is totally inconsistent with the agency's actions to imply that the agency delegated or granted actual contracting authority. Hence, in such cases, the doctrine of implied actual authority should not apply." *Cruz–*

*Pagan,* 35 Fed.Cl. at 63. Elkins' signature did not appear on any of the Modifications because it was not authorized to appear there. Nor can plaintiff point to any "integral" part of Elkins' duties that involved the authority to modify contracts or unilaterally waive operative accord and satisfaction language. Accordingly, Elkins' alleged statements [20] concerning plaintiff's rights are not legally sufficient to support Safeco's claim for overhead costs. *See Contel of Cal., Inc. v. United States,* 37 Fed.Cl. 68, 73 (1996).

### III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiff's cross-motion for summary judgment is DENIED. The Clerk of the Court shall enter judgment for defendant. Each party shall bear its own costs.

IT IS SO ORDERED.

---

**20.** *See* Plaintiff's Reply at 14 n. 1 (deposition testimony of Mr. Caruk).